IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| SAMANTHA SMITH AND ROBERT MEANS, <br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY, JANET YELLEN, in her official capacity as Secretary of the Treasury, THE FINANCIAL CRIMES ENFORCEMENT NETWORK, and ANDREA GACKI, in her official capacity as Director of FinCEN, <br> *Defendants*. | § § § § § § § § § § § § § § § § § | Civil Action No. _____ |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs Samantha Smith and Robert Means ("Plaintiffs") seek relief from this Court against Defendants United States Department of the Treasury (Treasury Department), Janet Yellen (in her official capacity as Secretary of the Treasury), the Financial Crimes Enforcement Network (FinCEN), and Andrea Gacki (in her official capacity as Director of FinCEN) (collectively, the "Defendants").

**EXECUTIVE SUMMARY**

This lawsuit challenges the ability of the federal government to regulate the traditional relationship between private property owners and the state.

Like countless other Americans, Plaintiffs seek to make productive use of their properties. To protect themselves and their families while doing so, Plaintiffs choose to hold those properties through Limited Liability Companies (LLCs) under the laws

of the state of Texas.

For all of American history, this sort of arrangement was a matter of solely between the state and its private citizens. Indeed, in the debates surrounding the ratification of the Constitution, corporate formation was listed as one of many powers that was not delegated to the Federal Government and reserved exclusively to the states. 2 M. Farrand, Records of the Federal Convention of 1787, at 325 (1911).

Nevertheless, in 2021, Congress passed the Corporate Transparency Act (the "CTA") which requires individuals forming corporate entities under State law report sensitive information to the Financial Crimes Enforcement Network ("FinCEN"). William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116–283, §§ 6401–03, 134 Stat. 3388, 4604–25 (2021) (codified at 31 U.S.C. § 5336).

FinCEN promulgated rules to implement the Act in 2022. Beneficial Ownership Information Reporting Requirements, 87 Fed. Reg. 59,498 (Sept. 30, 2022) (codified at 31 C.F.R. pt. 1010) (the "CTA implementing rule"). Under these provisions, every American who forms a company that is a "reporting company" (which applies to approximately 32.6 million companies) must disclose sensitive, personal information to the federal government—regardless of whether the company is engaged in interstate commercial activity or any commercial activity at all. *Id*. at 59,549. This information is then put into a federal database that can be accessed by federal, State, local, tribal, and international enforcement agencies. *Id*. § 5336(c)(2)(B). Failure to disclose this traditionally private information is a crime,

punishable by civil penalties up to $500 per day, and criminal penalties up to a $10,000 fine, two years' imprisonment, or both. *Id.* § 5336(h)(1), (3).

But the Federal government has no authority to regulate this sort of intra-state non-economic activity. It certainly does not have the lawful authority to force private individuals to report private information to a federal law enforcement database solely because they choose to maintain their property through state-created corporate form.

Plaintiffs therefore seek relief from this Court to prevent this impending irreparable injury to their constitutional rights.

## PARTIES

1. Plaintiff Robert Means is an individual residing in Tyler, Texas.

2. Mr. Means owns and operates 2367 Oak Alley, LLC—a Texas LLC subject to the requirements of the CTA.

3. Plaintiff Samantha Smith is an individual residing in Austin, Texas.

4. Ms. Smith owns and operates Sage Rental Properties, LLC d.b.a. 4831 Calhoun Canyon Loop—a Texas LLC subject to the requirements of the CTA.

5. Defendant United States Department of the Treasury is an agency of the United States headquartered in Washington, D.C.

6. The Treasury Department is responsible for the administration and enforcement of the CTA, through FinCEN.

7. Defendant Janet Yellen is the Secretary of the United States Treasury and is responsible for enforcing the CTA and its implementing regulations. She is

sued in her official capacity.

8. Defendant Andrea Gacki is Director of FinCEN and shares responsibility for enforcing the CTA and its implementing regulations. She is sued in her official capacity.

## JURISDICTION AND VENUE

9. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) because this action arises under the United States Constitution; 28 U.S.C. § 1346 because this suit constitutes a civil action against an executive department of the United States; and 5 U.S.C. §§ 702 and 706 (providing for judicial review of agency action) because this matter involves questions arising under the Administrative Procedure Act.

10. This Court has the authority to grant declaratory relief under 28 U.S.C. § 2201 and preliminary and permanent injunctive relief under 28 U.S.C. § 2202. This court also has authority to stay and vacate rules under 5 U.S.C. §§ 705 and 706.

11. Venue is proper within this judicial district and division pursuant to 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(C) because this is a suit brought against an officer or employee of the United States in their official capacity, at least one plaintiff resides in this district, and no real property is in controversy. Venue is proper in the Tyler Division of the Eastern District of Texas pursuant to 28 U.S.C. § 124(c)(1).

## FACTS

**A.** *The Corporate Transparency Act*

12. On January 1, 2021, Congress passed the Corporate Transparency Act

as a part of the National Defense Authorization Act for Fiscal year 2021. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116–283, §§ 6401–03, 134 Stat. 3388, 4604–25 (2021) (codified at 31 U.S.C. § 5336).

13. The CTA requires that certain U.S. corporate entities disclose private information to federal officials at FinCEN.

14. The CTA requires personal information to be disclosed by both "beneficial owners" and "applicants."

15. A "beneficial owner" is defined as "an individual who, directly or indirectly, through any contract, arrangement, understanding, relationship, or otherwise" (i) "exercises substantial control over the entity;" or (ii) "owns or controls not less than 25 percent of the ownership interests of the entity." 31 U.S.C. § 5336(a)(3)(A).

16. An "applicant" is defined as any individual who files an application to form a reporting company or "registers or files an application to register" a non-U.S. company to do business in the United States. *Id.* § 5336(a)(2).

17. Under the Act a "reporting company" is defined as a "corporation, limited liability company, or similar entity that is (i) created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe; or (ii) formed under the law of a foreign country and registered to do business in the United States by the filing of a document with a secretary of state or a similar office under the laws of a State or Indian Tribe." *Id.* § 5336(a)(11). The

CTA exempts twenty-three categories of companies from these requirements. This includes companies with (a) more than 20 fulltime employees in the United States, (b) more than $5 million in gross receipts or sales, and (c) an operating presence at a physical office in the United States. *Id.* § 5336(a)(11)(B). The CTA also allows the Secretary of the Treasury to expand this list by regulation. *Id.* § 5336(a)(11)(B)(xxiv).

18. Both "beneficial owners" and "applicants" of a reporting company must disclose their full legal name, date of birth, current residential or business address, and an identification number from an approved identification document such as a passport, driver's license, state-issued identification card, or a FinCEN-issued identifier number. *Id.* § 5336(b)(2)(A).

19. Additionally, if any of the above-required information changes the company must provide the updated information to FinCEN no more than one year after the change. *Id.* § 5336(b)(1)(D).

20. Failure to provide this information or to keep it updated is a crime subject to fines of up to $10,000, imprisonment of up to two years or both. *Id.* § 5336(h)(3).

21. Failure to provide or upkeep this information is subject to those same civil and criminal penalties. *Id.* § 5336(h)(1)(B), (h)(3).

22. Coverage under the CTA also does not turn on whether a covered party has any connection to crime or interstate or foreign commerce.

23. Rather, the CTA is triggered solely by an individual's decision to create an entity by filing a document with their secretary of state. *Id.* § 5336(a)(11)(A)(ii).

24. Nor is the CTA related to taxation, foreign affairs, or any other power of Congress.

25. The data collected under the CTA is conveyed to FinCEN for the purpose of creating a database of information of those who own businesses within the United States. *Id.* § 5336(c).

26. This database must be maintained for at least five years after a reporting company has terminated. *Id.* § 5336(c)(1). For active companies, the information is retained indefinitely, even if the individual is no longer associated with the entity. *Id.*

27. FinCEN is permitted to disclose the reported personal information to any federal national security, intelligence, or law enforcement agency; to State, local, and tribal law enforcement agencies; with financial institutions for customer due diligence (with the reporting company's consent); and with "a Federal functional regulator or other appropriate regulatory agency," including foreign governmental agencies. *Id.* § 5336(c)(2)(B).

28. Although the statute clarifies FinCEN needs court authorization to disclose information to State, local, or tribal law enforcement agencies, court authorization is not required when that information is sought from a federal agency, including when the federal agency is making a request on behalf of a foreign government. *Id.* § 5336(c)(2)(B)(i)–(ii).

29. If a federal agency requests information on behalf of a foreign law enforcement agency, prosecutor, or judge FinCEN can provide the information so long

7

as they attempt to limit the use of the information to the "investigation or national security or intelligence activity" that the foreign or international entity has in mind. *Id.* § 5336(c)(2)(B)(ii).

**B.** *The CTA Implementing Rule*

30. On September 29, 2022, FinCEN issued a final rule (the "CTA implementing rule") implementing the CTA's beneficial ownership reporting requirements. Beneficial Ownership Information Reporting Requirements, 87 Fed. Reg. 59,498 (Sept. 30, 2022) (codified at 31 C.F.R. pt. 1010). The rule took effect on January 1, 2024.

31. Beginning on January 1, 2024, the CTA implementing rule requires information about newly formed entities be reported within 30 days of formation. 31 C.F.R. § 1010.380(a)(1)(i)–(ii).

32. For entities formed before January 1, 2024 (such as Plaintiff's Company) this information must be reported by January 1, 2025. 31 C.F.R. § 1010.380(a)(1)(iii).

33. The CTA implementing rule is final agency action.

34. The CTA implementing rule incorporates the mandates contained in the CTA.

35. Like the CTA, the implementing rule mandates that individuals disclose private information based solely on the decision to incorporate.

36. While the implementing rule incorporates the required disclosure under the Act, it also requires reporting companies disclose not only the number of an approved identification document but also an image of that approved identification

document. 31 C.F.R. § 1010.380(b)(1)(ii)(E).

37. Like the CTA, the implementing rule does not include a jurisdictional element which limits its scope to individuals engaged in interstate or foreign commerce or suspected of crimes.

38. And, like the CTA, the implementing rule mandates that this information be disclosed to FinCEN for the purpose of creating the database outlined in the CTA.

C. *Plaintiffs' Injuries*

39. Plaintiff Samantha Smith owns a single rental property located at 4831 Calhoun Canyon Loop, Austin, Texas 78735.

40. After her husband and her husband's parents passed away, Ms. Smith decided to utilize the former home of her in-laws (the Property) as a rental property in order to provide for her children.

41. To protect herself and her family, in 2021, Ms. Smith incorporated Sage Rental Properties, LLC d.b.a. 4831 Calhoun Canyon Loop (Sage Rental).

42. The Property is the only real property or asset Sage Rental manages.

43. Sage Rental does not buy, sell, or trade, goods or services in interstate commerce.

44. Nor does Sage Rental own any interstate or foreign assets.

45. Under both the CTA and the implementing rule, Sage Rental is a reporting company.

46. Under both the CTA and the implementing rule, Ms. Smith is both a

"beneficial owner" and an "applicant."

47. Under both the CTA and the implementing rule, Ms. Smith is required to disclose sensitive, personally identifiable information to FinCEN.

48. The information Ms. Smith is required to disclose under both the CTA and the implementing rule includes information Ms. Smith is not required to disclose under Texas law. Tex. Tax Code § 171.203.

49. Ms. Smith will be required to expend resources in preparing these reports and will be required to expend time and money in order to maintain the accuracy of the information as is required under both the Act and the Rule.

50. Plaintiff Robert Means is an owner of 2367 Oak Alley, LLC.

51. 2367 Oak Alley, LLC exists as a holding company to manage the leasehold on a single office building in Tyler, Texas.

52. 2367 Oak Alley, LLC does not buy, sell, or trade, goods or services in interstate commerce.

53. Nor does 2367 Oak Alley, LLC own any interstate or foreign assets.

54. Under both the CTA and the implementing rule, 2367 Oak Alley, LLC is a reporting company.

55. Under both the CTA and the implementing rule, Mr. Means is both a "beneficial owner" and an "applicant."

56. Under both the CTA and the implementing rule, Mr. Means is required to disclose sensitive, personally identifiable information to FinCEN.

57. The information Mr. Means is required to disclose under both the CTA

and the implementing rule includes information Mr. Means is not required to disclose under Texas law. Tex. Tax Code § 171.203.

58. Mr. Means will be required to expend resources in preparing these reports and will be required to expend time and money in order to maintain the accuracy of the information as is required under both the Act and the Rule.

## COUNT I
## THE ACT EXCEEDS
## THE LIMITATIONS OF ARTICLE I, SECTION 8
## OF THE UNITED STATES CONSTITUTION

59. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

60. It is axiomatic that "[t]he Constitution creates a Federal Government of enumerated powers." *United States v. Lopez*, 514 U.S. 549, 552 (1995).

61. Any "powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

62. There are seventeen specific powers enumerated in Article I, Section 8 of the Constitution, along with the power "[t]o make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, § 8.

63. The power to charter corporations is neither explicitly nor implicitly among the federal government's enumerated powers. *See* U.S. Const. art. I, § 8.

64. To the contrary, this power was expressly rejected at the Founding.

11

65. Virginia delegate James Madison introduced a proposal to give Congress the authority "to grant charters of incorporation where the interest of the U.S. might require & the legislative provisions of individual States may be incompetent." 2 The Records of the Federal Convention of 1787, at 615 (Max Farrand ed., 1911).

66. This proposal was defeated 8 votes to 3. *Id.* at 616.

67. Instead, since the Founding, the states have been the sole entity with the power to charter corporations for general purposes. *See Trustees of Dartmouth College v. Woodward,* 17 U.S. (4 Wheat.) 518 (1819). Congress may only charter a corporation to effectuate its enumerated powers. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 409 (1819).

68. "It thus is an accepted part of the business landscape in this country for States to create corporations, to prescribe their powers, and to define the rights that are acquired by purchasing their shares." *CTS Corp. v. Dynamics Corp. of Am.*, 481 U.S. 69, 91 (1987).

69. The federal government claims that the CTA is justified under the Commerce Clause as a means to regulate interstate and foreign money laundering.

70. The Commerce Clause grants Congress authority "[t]o regulate Commerce . . . among the several States." U.S. Const. art. I, § 8, cl. 3.

71. The Necessary and Proper Clause grants Congress authority to "make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or in any Department or Officer thereof." U.S. Const. art. I, § 8,

cl. 18.

72. But the Act cannot be justified under the Commerce Clause, even when supplemented by the Necessary and Proper Clause.

73. The commerce power generally falls within three broad categories: (1) regulating channels of interstate commerce; (2) regulating instrumentalities of interstate commerce; and (3) regulating activities that substantially affect interstate commerce. *Gonzales v. Raich*, 545 U.S. 1, 16–17 (2005).

74. The substantial effects test relies not merely on the Commerce Clause, but upon the Necessary and Proper Clause as well. *See Gonzales*, 545 U.S. at 33–42 (Scalia, J., concurring).

75. Regulating corporate formation is not a regulation of a channel nor an instrumentality of interstate commerce.

76. Nor does a corporate entity formed under state law *per se* substantially affect interstate commerce.

77. At most, the CTA alleges that criminals could use corporate entities to facilitate the interstate crime of money laundering.

78. But virtually anything could be used to facilitate interstate crime. That sort of tenuous connection is not sufficient to trigger federal authority.

79. This is particularly true when the regulated activity is one that has been traditionally reserved to the domain of state governments.

80. All other claims of authority under Article 1, Section 8 also fail.

81. The Act is therefore unlawful.

## COUNT II
## THE RULE VIOLATES
## THE ADMINISTRATIVE PROCEDURE ACT

82. Plaintiff incorporates the allegations in the foregoing paragraphs as if set forth fully herein.

83. Under the Administrative Procedure Act, an agency action is invalid if it is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

84. An agency action that exercises authority beyond Congress's enumerated powers is contrary to a constitutional right, power, privilege, or immunity.

85. The CTA implementing rule constitutes final agency action.

86. As explained above, the CTA implementing rule restates and extends the CTA and does not remedy any of the CTA's Constitutional issues.

87. And, as explained above, the CTA exceeds federal authority under Article 1, Section 8.

88. The Rule therefore violates 5 U.S.C. § 706 of the Administrative Procedure Act because it neither implicates the exercise of any enumerated power nor is it necessary and proper to such an exercise.

## INJUNCTIVE RELIEF ALLEGATIONS

89. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

90. Plaintiffs allege that both on their face and as applied, the CTA and its

implementing rule exceed Congress's enumerated powers, thereby violating Plaintiffs' constitutional rights.

91. If an injunction does not issue enjoining Defendants from enforcing the CTA and its implementing rule, Plaintiffs will be irreparably harmed.

92. Plaintiffs have no plain, speedy, and adequate remedy at law to prevent the Defendants from enforcing the CTA and its implementing rule.

93. If not enjoined by this Court, Defendants will continue to enforce the CTA and its implementing rule in derogation of Plaintiffs' rights. *See* Press Release, FinCEN, Notice Regarding National Small Business United v. Yellen (Mar. 11, 2024), https://tinyurl.com/3f9tnzsn.

94. Accordingly, injunctive relief is appropriate.

## DECLARATORY RELIEF ALLEGATIONS

95. Plaintiffs incorporate the allegations in the foregoing paragraphs as if set forth fully herein.

96. An actual and substantial controversy exists between Plaintiffs and Defendants as to their legal rights and duties with respect to whether the CTA and its implementing rule violate the United States Constitution.

97. This case is presently justiciable because the CTA and its implementing rule apply to Plaintiffs on their face and Plaintiffs are applicants and beneficial owners of entities subject to disclosure requirements under the CTA and its implementing rule.

98. Declaratory relief is therefore appropriate to resolve this controversy.

**PRAYER FOR RELIEF**

Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, it is appropriate and proper that a declaratory judgment be issued by this Court, declaring the Corporate Transparency Act and its implementing rule unconstitutional.

Furthermore, pursuant to 28 U.S.C. § 2202 and Fed. R. Civ. P. 65, it is appropriate and hereby requested that the Court issue preliminary and permanent injunctions prohibiting Defendants from enforcing the Corporate Transparency Act and its implementing rule.

WHEREFORE, Plaintiff prays for judgment against Defendants and that the Court:

(1) Stay the effective date of the CTA implementing rule for the duration of this litigation under the Administrative Procedure Act, 5 U.S.C. § 705;

(2) declare that the CTA and its implementing rule are unconstitutional on their face because they exceed the powers the United States Constitution grants to any branch of the federal government;

(3) hold unlawful and set aside the CTA implementing rule as invalid under the Administrative Procedure Act, 5 U.S.C. § 706, because it is contrary to constitutional right, power, privilege, or immunity;

(4) issue a preliminary injunction against the Defendants, as well as all agents, administrators, employees, or other persons acting on behalf of the Defendants, from enforcing the CTA;

(5) issue a permanent injunction against the Defendants, as well as all

agents, administrators, employees, or other persons acting on behalf of the Defendants, from enforcing the CTA;

(6) award Plaintiffs their costs and expenses incurred in bringing this action, including, but not limited to, reasonable attorney fees pursuant to 28 U.S.C. § 2412; and

(7) grant such other and further relief as the Court deems equitable, just, and proper.

Respectfully Submitted,

*/s/ Chance Weldon*
ROBERT HENNEKE
TX Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
TX Bar No. 24076767
cweldon@texaspolicy.com
CHRISTIAN TOWNSEND
TX Bar No. 24127538
ERIC HEIGIS
VA Bar No. 98221
eheigis@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728