# United States Court of Appeals

**FIFTH CIRCUIT**
OFFICE OF THE CLERK

**LYLE W. CAYCE**
**CLERK**

**TEL. 504-310-7700**
**600 S. MAESTRI PLACE,**
**Suite 115**
**NEW ORLEANS, LA 70130**

December 23, 2024

MEMORANDUM TO COUNSEL OR PARTIES LISTED BELOW:

    No. 24-40792    Texas Top Cop Shop v. Garland
                       USDC No. 4:24-CV-478

Enclosed is an order entered in this case.

                            Sincerely,

                            LYLE W. CAYCE, Clerk

                            By: _____
                            Christy M. Combel, Deputy Clerk
                            504-310-7651

Mr. Robert Alt
Mr. Brett Christopher Bartlett
Mr. Grady Block
Mr. Murphy J. Foster III
Mr. Andrew Michael Grossman
Mr. Steven H. Hazel
Mr. Neville S. Hedley
Mr. Caleb Kruckenberg
Mr. Sheng Tao Li
Ms. Faith E. Lowry
Mr. John C. Neiman Jr.
Mr. David O'Toole
Mr. Michael David Pepson
Mr. Joshua Martin Robbins
Mr. Gene C. Schaerr
Mr. Andrew Layton Schlafly
Ms. Sophia Shams
Mr. Reilly Stephens
Mr. John Clay Sullivan
Mr. Daniel Bentele Hahs Tenny
Mr. Stephen J. Van Stempvoort
Mr. Charles Devin Watkins
Mr. Walter M. Weber
Mr. Gregg Sandler Weinberg
Mr. John Marc Wheat
Mr. Michael Ray Williams

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit
**FILED**
December 23, 2024
Lyle W. Cayce
Clerk

No. 24-40792

---

Texas Top Cop Shop, Incorporated; Russell Straayer; Mustardseed Livestock, L.L.C.; Libertarian Party of Mississippi; National Federation of Independent Business, Incorporated; Data Comm for Business, Incorporated,

*Plaintiffs—Appellees,*

*versus*

Merrick Garland, *U.S. Attorney General*; Treasury Department; Andrea Gacki, Director of the Financial Crimes Enforcement Network; Financial Crimes Enforcement Network; Janet Yellen, *Secretary, U.S. Department of Treasury,*

*Defendants—Appellants.*

---

Appeal from the United States District Court
for the Eastern District of Texas
USDC No. 4:24-CV-478

---

UNPUBLISHED ORDER

No. 24-40792

Before STEWART, HAYNES, and HIGGINSON, *Circuit Judges*.[1]

PER CURIAM:

The Corporate Transparency Act ("CTA") obliges certain nonexempt companies to report the identity of their beneficial owners and applicants for incorporation. 31 U.S.C. § 5336. On December 3, 2024—less than one month before the crucial January 1, 2025 reporting deadline—the district court granted Plaintiffs-Appellees' (the "Businesses") motion for a preliminary injunction and entered a nationwide injunction enjoining the CTA and the corresponding Reporting Rule. *Id.*; 31 C.F.R. § 1010.380. The district court concluded that both are unconstitutional and issued nationwide injunctions against each, despite no party requesting it do so and despite every other court to have considered this issue tailoring relief to the parties before it or denying relief altogether.[2]

The government, Defendants-Appellants, filed an emergency motion with this court seeking a stay. Because the government has met its burden under *Nken v. Holder*, 556 U.S. 418 (2009), we GRANT its motion for a temporary stay of the district court's order and injunction pending appeal.

---

[1] JUDGE HAYNES joins in part and disagrees in part. She agrees for an expedited appeal and agrees that a national injunction is not appropriate here, so she would grant a temporary stay of the preliminary injunction pending the decision of the merits panel regarding whether to deny a stay pending appeal as to the non-parties. However, she would deny the temporary stay as to the parties (while, of course, deferring to the merits panel on this point as well), including the members of NFIB, as long as their identities are disclosed to the government.

[2] Three other district courts have assessed the CTA's constitutionality. Two held that the CTA is likely constitutional and denied motions for preliminary injunctions. *Firestone v. Yellen*, 2024 WL 4250192, at *10 (D. Ore. Sept. 20, 2024); *Cmty. Ass'ns Inst. v. Yellen*, 2024 WL 4571412, at *14 (E.D. Va. Oct. 24, 2024)). One held that it is unconstitutional, but only issued an injunction that covered the plaintiffs in that case. *Nat'l Small Bus. United v. Yellen*, 721 F. Supp. 3d 1260, 1289 (N.D. Ala. 2024).

No. 24-40792

When deciding a motion to stay pending appeal, we consider four factors:

> (1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.

*Nken*, 556 U.S. at 434 (internal quotation marks omitted).

On the first factor, the government has made a strong showing that it is likely to succeed on the merits in defending CTA's constitutionality.[3] When Congress passed the bipartisan statute in 2021, it used its "broad authority under the Commerce Clause" to regulate economic activity. *See Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 549 (2012). As stated, the CTA requires certain corporate entities to report their beneficial ownership interest in order to target illicit financial activity. *See* 31 U.S.C. § 5336. In doing so, it regulates anonymous ownership and operation of businesses. Those "are part of an economic class of activities that have a substantial effect on interstate commerce." *See Gonzales v. Raich*, 545 U.S. 1, 17 (2005) (internal quotation marks omitted). Thus, a reporting requirement for entities engaged in these economic activities falls within "more than a century of [the Supreme] Court's Commerce Clause jurisprudence." *See id.* at 29 n.38.

---

[3] At minimum, the government has made a "substantial case" on the merits. *Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981) ("On motions for stay pending appeal the movant need not always show a 'probability' of success on the merits; instead, the movant need only present a substantial case on the merits when a serious legal question is involved and show that the balance of the equities weighs heavily in favor of granting the stay.")

No. 24-40792

The Businesses misapply *Sebelius* to the present case when they contend otherwise. In the context of the Affordable Care Act's health insurance mandate, the Supreme Court concluded that Congress was attempting to regulate individuals "whose commercial inactivity rather than activity is [their] defining feature." 567 U.S. at 556–57 (2012). The CTA, however, established reporting requirements for corporate entities whose "defining feature" is their ability and propensity to engage in commercial activity. *See id.* None of the Businesses have claimed that they do not engage in commercial activity, or economic activity more broadly. And although some corporate entities might abstain from economic activity, the CTA excludes many of those from its definition of a "reporting company," thereby absolving them of the Act's reporting obligations. 31 U.S.C. § 5336(a)(11)(B). The CTA also allows the federal government to exempt any other "entity or class of entities" for which reporting would not "serve the public interest" and "would not be highly useful" in "efforts to detect, prevent, or prosecute money laundering, the financing of terrorism, proliferation finance, serious tax fraud, or other crimes." *Id.* § 5336(a)(11)(B)(xxiv). While these exemptions might not sweep in every single dormant corporate entity, they strongly support the government's argument that the CTA regulates the ownership and operation of businesses by imposing modest disclosure requirements to a facilitate a regulatory scheme aimed at combatting financial crimes. Because Congress only needs a "rational basis" to conclude that a regulated activity "substantially affects interstate commerce," enacting the CTA was within its commerce power. *See Raich*, 545 U.S. at 16–17, 19.[4]

---

[4] The government also argues that the CTA is necessary and proper for executing Congress's foreign commerce powers, tax powers, and foreign affairs interests, as well as the President's law-enforcement and national-security powers. We pretermit discussion of these arguments here because the government's Commerce Clause analysis satisfies its burden under the first *Nken* factor.

Independently, the government has made a strong showing against the Businesses' facial challenge to the CTA.[5] The Supreme Court has been clear that a successful facial "challenger must establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987). In other words, "[t]he fact that [a statute] might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid." *Id.*; *see also United States v. Rahimi*, 602 U.S. 680, 701 (2024) (confirming that, when assessing facial challenges, courts must "consider the circumstances in which [the statute is] most likely to be constitutional" instead of "focus[ing] on hypothetical scenarios where [the statute] might raise constitutional concerns."). Here, the CTA at least operates constitutionally when it requires that corporations engaged in business operations affecting interstate commerce disclose their beneficial owner and applicant information to the Department of the Treasury's Financial Crimes Enforcement Network ("FinCEN"). *See Raich*, 545 U.S. at 17. Thus, the statute is likely constitutional on its face. *See Salerno*, 481 U.S. at 745.

Moving on, the government satisfies the second *Nken* factor because a last-minute injunction of a statute proposed and passed by the people's representatives necessarily inflicts irreparable harm. *See Maryland v. King*, 567 U.S. 1301, 1303 (2012). Indeed, "any time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it

---

[5] Notably, the district court skipped over the Businesses' as-applied challenge and only assessed the CTA's facial validity. In doing so, it erroneously departed from what it acknowledged is the normal rule that "we generally decide the as-applied challenge first because it is the narrower consideration." *Buchanan v. Alexander*, 919 F.3d 847, 852 (5th Cir. 2019).

Case 6:24-cv-00336-JCB Document 40-2 Filed 12/26/24 Page 2 of 22 PageID #: 237
Case 24-40792  Document: 94-1  Page: 7  Date Filed: 12/23/2024

No. 24-40792

suffers a form of irreparable injury." *Id.* (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,* 434 U.S. 1345, 1351 (1977)).

Similarly, the government has satisfied the third and fourth *Nken* factors by showing that "that the balance of the equities weighs heavily in favor of granting the stay." *See Ruiz v. Estelle*, 650 F.2d 555, 565 (5th Cir. Unit A June 1981). To start, the harm that a stay would cause the Businesses is minimal. FinCEN estimated that a typical, simple company would spend about ninety minutes (or about $85 worth of time) to complete and file CTA's required report, which may be filed for free. 87 Fed. Reg. 59498, 59589–90 (Sept. 30, 2022). The Businesses neither contend that they have more complex structures that would require more time or money, nor state their potential costs with any particularity.[6]

When balancing this harm against the public's urgent interest in combatting financial crime and protecting our country's national security, equity favors a stay. As the government explains, and the district court recognizes, a last-minute nationwide preliminary injunction would undermine our ability to push other countries to reform their anti-money

---

[6] Because the district court has not yet addressed the CTA's constitutionality as applied to the Businesses' First and Fourth Amendment claims, any additional harm that they allege they face from the CTA infringing those rights is immaterial to our stay analysis. *See Nken*, 556 U.S. at 434; *Google v. Hood*, 822 F.3d 212, 228 (5th Cir. 2016) ("[I]nvocation of [constitutional injury] cannot substitute for the presence of an imminent, non-speculative irreparable injury.").

Case 6:24-cv-00336-JCB  Case: 24-40792  Document: 29-1 40-2  Page: 7 Filed 12/26/24  Date Filed: 12/23/2024  Page 8 of 8  PageID #: 238

No. 24-40792

laundering and counterterrorism regimes and to address the most fundamental gap in our own regime.[7]

Accordingly, the government has demonstrated that a stay is warranted. *See Nken*, 556 U.S. at 434.

IT IS ORDERED that the government's emergency motion for a stay pending appeal is GRANTED. IT IS FURTHER ORDERED that this appeal is EXPEDITED to the next available oral argument panel.

---

[7] The Businesses warn that lifting the district court's injunction days before the compliance deadline would place an undue burden on them. They fail to note, however, that they only filed suit in May 2024 and the district court's preliminary injunction has only been in place for less than three weeks as compared to the nearly four years that the Businesses have had to prepare since Congress enacted the CTA, as well as the year since FinCEN announced the reporting deadline.