# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| SAMANTHA SMITH, *et al.*, <br><br> *Plaintiffs*, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF THE TREASURY, *et al.*, <br><br> *Defendants*. | No. 6:24-cv-336-JDK |

## DEFENDANTS' MOTION FOR STAY PENDING APPEAL

Defendants have appealed from this Court's grant of a preliminary injunction and a stay under § 705 of the Administrative Procedure Act (APA), Mem. Op. & Order, ECF No. 30. *See* Notice of Appeal, ECF No. 32. Defendants hereby move the Court to stay its order granting that preliminary relief pending a decision from the Fifth Circuit on Defendants' appeal. *See* Fed. R. App. P. 8(a)(1). Since this Court issued its decision, the Supreme Court issued a stay of a preliminary injunction and § 705 stay in a parallel case, *McHenry v. Texas Top Cop Shop* (*Texas Top Cop Shop IV*), No. 24A653, 604 U.S. ----, 2025 WL 272062, at *1 (U.S. Jan. 23, 2025). The same result is warranted here.

If the stay is granted, the Department of the Treasury's Financial Crimes Enforcement Network (FinCEN) intends to extend the Corporate Transparency Act (CTA) compliance deadline for thirty days. During that period, FinCEN will assess whether it is appropriate to modify the CTA's reporting requirements to alleviate the burden on low-risk entities while prioritizing enforcement to address the most significant risks to U.S. national security. Staying the grant of preliminary relief will help facilitate that process.

## BACKGROUND

1. This is one of a number of actions filed around the country to challenge the constitutionality of the CTA, which was enacted on January 1, 2021 to require certain companies to disclose ownership information to FinCEN. 31 U.S.C. § 5336. In enacted findings accompanying the CTA, Congress determined that "the collection of beneficial ownership information" is "needed" to "protect interstate and foreign commerce" and to "better enable critical national security, intelligence, and law enforcement efforts to counter money laundering, the financing of terrorism, and other illicit activity." Pub. L. No. 116-283, div. F, § 6402(5), 134 Stat. 4547, 4604 (2021).

The CTA imposes this disclosure requirement on "reporting compan[ies]," 31 U.S.C. § 5336(b)(1)(A), which generally include any "corporation, limited liability company, or other similar entity that is" either "created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe," or "formed under the law of a foreign country and registered to do business in the United States by the filing of a document with a secretary of state or a similar office under the laws of a State or Indian Tribe," *id.* § 5336(a)(11)(A). The CTA excludes from that general definition, however, specified categories of businesses and allows the government to exempt any other "entity or class of entities" for which "requiring beneficial ownership information" would not "serve the public interest" and "would not be highly useful" in "efforts to detect, prevent, or prosecute money laundering, the financing of terrorism, . . . or other crimes." *Id.* § 5336(a)(11)(B)(xxiv).

The CTA directs FinCEN to implement certain aspects of the statute by regulation, *see* 31 U.S.C. § 5336(b)(5), and FinCEN accordingly issued a final rule implementing the CTA's reporting requirements in September 2022, *see* 87 Fed. Reg. 59,498 (Final Rule) (codified at 31 C.F.R. § 1010.380, as amended by *Beneficial Ownership Information Reporting Deadline Extension for Reporting Companies Created or Registered in 2024*, 88 Fed. Reg. 83,499 (Nov. 30, 2023)). As relevant here, the Final Rule, as amended,

established deadlines by which covered entities were required to comply with the statute. For businesses created or registered before 2024, the Final Rule required compliance by January 1, 2025. 31 C.F.R. § 1010.380(a)(1)(iii). For businesses created or registered during 2024, the Final Rule required compliance within 90 days of formation. *Id.* § 1010.380(a)(1)(i)(A). And for businesses created or registered after 2024, the Final Rule required compliance within 30 days of formation. *Id.* § 1010.380(a)(1)(i)(B).

2. Plaintiffs are two individuals who assert that they operate limited liability companies that are subject to the reporting requirements under the extant Final Rule. Complaint at 3, ECF No. 1; Smith Declaration at 3, ECF No. 7-1; Means Declaration at 3, ECF No. 7-2. Plaintiffs allege that Congress lacked the power to enact the CTA and that FinCEN accordingly lacked authority to issue the Final Rule. Complaint at 11-14. Plaintiffs sought an injunction against enforcement of the CTA and a § 705 stay of the Final Rule. Mot. for Prelim. Inj., ECF No. 7.

On January 7, 2025, this Court preliminarily enjoined the government from enforcing the CTA against the named plaintiffs and stayed the effective date of the final rule on a nationwide basis. Mem. Op. & Order at 33–34. This Court held that plaintiffs were likely to succeed on the merits because the CTA regulates companies even though some subset of companies may not, in fact, "use the channels of interstate commerce," *id.* at 14–15, or substantially affect interstate commerce, *id.* at 15–24, and because Congress cannot justify enacting the CTA as a necessary and proper exercise of its foreign commerce powers, *id.* at 24–26, its foreign affairs and national security powers, *id.* at 26–28, or its taxing power, *id.* at 28–30. This Court also held that the equitable factors for injunctive relief favored plaintiffs. *Id.* at 30–33.

The government filed a timely notice of appeal today.

3. Several weeks before this Court reached its decision, another judge in this district entered a nationwide injunction against enforcement of the CTA in *Texas Top Cop Shop v. Garland* (*Texas Top*

*Cop Shop I*), No. 4:24-cv-478, --- F. Supp. 3d ----, 2024 WL 5049220, at *37 (Dec. 5, 2024).  Like this Court, the *Texas Top Cop Shop I* district court concluded that Congress likely lacked the power to enact the CTA.  *See id.* *16–34.  This Court's analysis closely tracked the analysis of *Texas Top Cop Shop I*.  *See* Mem. Op. & Order 7, 10, 13, 18–19, 23, 27–32 (citing *Texas Top Cop Shop I*).

The government appealed the *Texas Top Cop Shop I* order and sought a stay pending appeal, which a motions panel of the Fifth Circuit granted on December 23, 2024.  *Texas Top Cop Shop, Inc. v. Garland*, No. 24-40792, 2024 WL 5203138 (5th Cir. Dec. 23, 2024).  The panel concluded that "the government has made a strong showing" that the CTA falls within "broad authority under the Commerce Clause" to regulate economic activity.  *Id.* at *1.

To allow entities subject to the CTA's requirements an opportunity to report following the stay of the preliminary injunction, FinCEN delayed the January 1, 2024, reporting deadline to January 13, 2024.  Shortly after the plaintiffs sought rehearing en banc, the merits panel vacated the stay order and expedited the case without expressing a view on "the parties' weighty substantive arguments."  *Texas Top Cop Shop, Inc. v. Garland*, No. 24-40792, 2024 WL 5224138, at *1 (5th Cir. Dec. 26, 2024).

The government applied to the Supreme Court for a stay of the preliminary injunction.  Application for Stay 1, 36-38, *Texas Top Cop Shop IV*, No. 24A653 (U.S. Dec. 31, 2024).  The Supreme Court stayed the district court's order in its entirety pending the disposition of this appeal and of any petition for writ of certiorari filed in that case.  *Texas Top Cop Shop IV*, 2025 WL 272062, at *1.  Justice Gorsuch concurred in the order and indicated that he would also have granted certiorari before judgment, as the government had suggested the Court may wish to do, "to resolve definitively the question whether a district court may issue universal injunctive relief."  *Id.* at *1 (Gorsuch, J., concurring).  Justice Jackson dissented, stating that "[h]owever likely the Government's success on the merits may be, … emergency relief is not appropriate because the applicant has failed to demonstrate sufficient exigency to justify [the Court's] intervention."  *Id.* at *1 (Jackson, J., dissenting).

## DISCUSSION

The government is entitled to a stay because it is likely to succeed on the merits and because the balance of the harms and the equities favor it . *See Nken v. Holder*, 556 U.S. 418, 434 (2009). The Supreme Court granted a stray of the nationwide relief in *Texas Top Cop Shop* and it follows that a stay should be granted here.

1. There is a strong presumption that "Acts of Congress . . . 'should remain in effect pending a final decision on the merits by [the Supreme] Court.'" *Turner Broadcasting System, Inc. v. FCC*, 507 U.S. 1301, 1301 (1993) (Rehnquist, C.J., in chambers) (citation omitted); *see Wisconsin Right to Life, Inc. v. FEC*, 542 U.S. 1305, 1305-1306 (2004) (Rehnquist, C.J., in chambers); *Doe v. Gonzales*, 546 U.S. 1301, 1308-1309 (2005) (Ginsburg, J., in chambers); *Heart of Atlanta Motel, Inc. v. United States*, 85 S. Ct. 1, 2 (1964) (Black, J., in chambers). The Supreme Court, therefore, has widely granted stays to keep federal statutes in effect pending review. *Bowen v. Kendrick*, 483 U.S. 1304, 1304 (1987) (Rehnquist, C.J., in chambers). That practice reflects the "presumption of constitutionality" that attaches to every Act of Congress. *United States v. Morrison*, 529 U.S. 598, 607 (2000).

In staying the district court's nationwide injunction in *Texas Top Cop Shop*, the Supreme Court abided by that longstanding practice and determined that the government should be permitted to implement the CTA pending the disposition of litigation challenging the law. *See McHenry*, 604 U.S. -----, 2025 WL 272062, at *1. That determination necessarily reflects the Supreme Court's conclusions both that the government has established a likelihood of success on the merits and that "the equities" and "the public interest" support implementation of the Final Rule pending resolution of the appellate process. *See Ohio v. EPA*, 603 U.S. 279, 291 (2024); *see also Nken*, 556 U.S. at 434. Although the Supreme Court was squarely presented with the alternative of staying the district court's injunction only as to nonparties, the Court declined to limit its stay in that way. There is no basis for this Court to reach a different conclusion. *See Tandon v. Newsom*, 593 U.S. 61, 63-65 (2021); *Garland v. Blackhawk*

*Mfg. Grp., Inc.*, 144 S. Ct. 338 (2023) (unanimously vacating injunction entered after Supreme Court had previously granted stay of other preliminary relief in same case).

      3. The balance of harms and equities favor the government. "'[A]ny time a [government] is enjoined by a court from effectuating statutes enacted by representatives of its people, it suffers a form of irreparable injury.'" *Valentine v. Collier*, 956 F.3d 797, 803 (5th Cir. 2020) (per curiam). The inherent harm of blocking a constitutional enactment provides a sufficient basis to stay preliminary relief and it cannot be overcome by whatever burden plaintiffs face in complying with a validly enacted Act of Congress.

      As a matter of policy, Treasury continues to assess the potential burden of the Final Rule. If this Court grants the stay, FinCEN intends to announce that it will extend the compliance deadline for thirty days. During that period, FinCEN intends to assess its potential options to prioritize reporting for those entities that pose the most significant national security risks while providing relief to lower-risk entities and, if warranted, amending the Final Rule. The existence of the § 705 stay of the Final Rule should not be permitted to frustrate Treasury's efforts to implement the extant Final Rule or to modify it, as warranted.

      2. The government is likely to succeed on the merits because Congress acted well within its enumerated powers when it enacted the CTA. Congress has broad power under the Commerce Clause not only to regulate interstate commerce directly but also to regulate purely local activity as part of a broader regulatory scheme. *See Groome Res. Ltd. v. Parish of Jefferson*, 234 F.3d 192, 205 (5th Cir. 2000). It exercised that power to require basic disclosure of beneficial ownership from certain entities with the ability and propensity to engage in commercial activities. Congress determined that the CTA would enable the federal government to better combat financial crime, and this Court had no basis to disregard that legislative judgment.

      By regulating ongoing corporate conduct, the CTA regulates economic activity. The statute

imposes reporting requirements on corporations, which are entities authorized to partake in various economic transactions, such as "[m]ak[ing] contracts," "borrow[ing] money," "incur[ring] liabilities," and transferring "real or personal property." Del. Code Ann. tit. 8, § 122; see also 6 Carol A. Jones, *Fletcher Cyclopedia of the Law of Corporations* § 2478, pp. 259-60 (2015 rev. ed.). That would be true even in the hypothetical case, not presented here, of a corporate entity that does not itself participate in commercial or economic activity. Even if such a corporation could exist—which is not at all clear given the various requirements associated with creating and maintaining a corporate form—there should be no dispute that the overwhelming majority of the statute's applications are to corporations that participate in commercial or economic activity, including plaintiffs in this case. The theoretical possibility that the CTA might also sweep in a corporation that chooses not to engage in such activity does not disqualify the law as a valid exercise of Congress's power to regulate commerce. See *Perez v. United States*, 402 U.S. 146, 154 (1971) ("Where the class of activities is regulated and that class is within the reach of federal power, the courts have no power 'to excise, as trivial, individual instances' of the class.")

      The CTA is also necessary and proper for carrying into execution other powers. The Necessary and Proper Clause does not require a direct connection between a statute and "a single specific enumerated power." *United States v. Comstock*, 560 U.S. 126, 143 (2010). Rather, the Necessary and Proper Clause authorizes laws that effectuate the "aggregate" of multiple powers. *Legal Tender Cases*, 79 U.S. (12 Wall.) 457, 535 (1870). The CTA, therefore, does not rest on any single power in isolation. Congress's power to impose registration requirements designed to facilitate tax collection, *see, e.g.*, *Sonzinsky v. United States*, 300 U.S. 506, 513 (1937), to regulate foreign affairs and commerce, *see, e.g.*, *Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 160 (1963), and to support Executive Branch law enforcement, *see, e.g.*, *Ex parte Karstendick*, 93 U.S. 396, 400 (1876), all underscore that enacting the CTA falls well within the outer perimeter of Congress's power.

Moreover, plaintiffs in this case are engaged in the business of leasing real property. Smith Declaration at 2–3, ECF No. 7-1; Means Declaration at 2, ECF No. 7-2. At the very least, they are thus engaged in economic activity that, as a class, affects commerce. *See Groome*, 234 F.3d at 206 (rejecting Commerce Clause challenge because plaintiff "exists as a for-profit entity providing rental housing to its clients and is, thus, itself a commercial actor"). Because the CTA can be applied constitutionally to the plaintiffs in this case, both their facial and as-applied challenges necessarily fail. *See United States v. Salerno*, 481 U.S. 739, 745 (1987) (a facial challenge succeeds only if the plaintiff "establishes that no set of circumstances exists under which the law would be valid, or he shows that the law lacks a plainly legitimate sweep."); *see also Sabri v. United States*, 541 U.S. 600, 604, 609 (2004) (applying this test to an enumerated-powers challenge).

## **CONCLUSION**

For the foregoing reasons, the Court should stay the order granting preliminary relief in its entirety pending appeal, as the Supreme Court did in *Texas Top Cop Shop*. At minimum, the Court should stay its nationwide § 705 stay and allow the government to act freely with respect to all but the named plaintiffs.

        Respectfully submitted,

        ABE M. MCGLOTHIN, JR.
        ACTING UNITED STATES ATTORNEY

        */s/ James Gillingham*
        JAMES GILLINGHAM
        Assistant United States Attorney
        Texas Bar No. 24065295
        110 N. College Ave.; Suite 700
        Tyler, Texas 75702
        Tel: (903) 590-1400
        Fax: (903) 590-1436
        Email: James.Gillingham@usdoj.gov

## CERTIFICATE OF CONFERENCE

In compliance with Local Rule CV-7(h), undersigned counsel hereby certifies that I have conferred with Plaintiffs' counsel, who is opposed to the relief sought in this motion.

> */s/ James Gillingham*
> JAMES GILLINGHAM
> Assistant United States Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on February 5, 2025, a true and correct copy of the foregoing document was filed electronically with the court and has been sent to all counsel of record via the court's electronic filing system.

> */s/ James Gillingham*
> JAMES GILLINGHAM
> Assistant United States Attorney