# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# TYLER DIVISION

| | |
|---|---|
| **SAMANTHA SMITH AND** ) | |
| **ROBERT MEANS,** ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 6:24-CV-00336 |
| ) | |
| **UNITED STATES DEPARTMENT** ) | |
| **OF THE TREASURY,** *et al.,* ) | |
| ) | |
| Defendants. ) | |

**BRIEF FOR THE NATIONAL FEDERATION OF INDEPENDENT BUSINESS, INC. (NFIB) AS *AMICUS CURIAE* IN SUPPORT OF PLAINTIFFS AND IN OPPOSITION TO DEFENDANTS' REQUEST FOR STAY**

Case 6:24-cv-00336-JDK Document 86-2 Filed 02/14/25 Page 2 of 16 PageID #: 1304

**TABLE OF CONTENTS**

INTEREST OF *AMICUS CURIAE* .................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

    I. Based on the Current Landscape of CTA Litigation, the Government's Likelihood of Success is Negligible at Best. ........................................................................................... 3

    II. FinCEN's Own Delays Demonstrate that it is Not Irreparably Harmed Absent a Stay. ..... 6

    III. The Equities Favor the Tens of Millions of Entities under the CTA's Reach Because Reinstatement of the Reporting Rule Will Impose Nonrecoverable Time, Financial, and Privacy Costs. ................................................................................................................... 9

CONCLUSION ............................................................................................................................. 11

# TABLE OF AUTHORITIES

**CASES**

*Career Colls. & Schs. Of Tex. v. United States Dep't of Educ.*,
   98 F.4th 220 (5th Cir. 2024) ............................................................................................. 5, 6

*Community Ass'ns Inst. v. Yellen*,
   No. 1:24-cv-1597, 2024 WL 4571412 (E.D. Va. Oct. 24, 2024) ............................................ 3

*Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*,
   603 U.S. 799 (2024) ................................................................................................................ 5

*Dep't of Educ. V. Career Colls. & Schs. Of Tex*,
   No. 24-413 .............................................................................................................................. 6

*Firestone v. Yellen*,
   No. 3:24-cv-1034, 2024 WL 4250192 (D. Or. Sept. 20, 2024) .............................................. 3

*Hotze v. Treasury*,
   No. 2:24-cv-210, 2024 WL 5248148 (N.D. Tex. Dec. 30, 2024), ........................................... 4

*Marbury v. Madison*,
   5 U.S. 137 (1 Cranch 137) (1803) .......................................................................................... 6

*McHenry v. Texas Top Cop Shop, Inc.*,
   No. 24A653, 2025 WL 272062, (U.S. Jan 23, 2025) .................................................... *passim*

*Nat'l Small Bus. United v. Yellen*,
   721 F. Supp. 3d 1260 (N.D. Ala. Mar. 1, 2024) ............................................................. 3, 4, 9

*Nken v. Holder*,
   556 U.S. 418, 434 (2009) ............................................................................................ 2, 3, 4, 6, 9

*Small Bus. Ass'n of Mich. v. Yellen*,
   No. 1:24-cv-00314 (W.D. Mich. Apr. 29, 2024) .................................................................... 4

*Smith. v. Dep't of Treasury*,
   No. 6:24-cv-336, 2025 WL 41924 (E.D. Tex. Jan. 7, 2025) ................................................... 3

*Texas Top Cop Shop, Inc. v. Garland*,
   No. 4:24-cv-478, 2024 WL 5049220 (E.D. Tex. Dec. 5, 2024) .......................................... 3, 5

*Texas v. EPA*,
   829 F.3d 405 (5th Cir. 2016) ................................................................................................ 10

*Thunder Basin Coal Co. v. Reich*,
   510 U.S. 200 (1994) .............................................................................................................. 10

*Whole Woman's Health v. Jackson*,
   141 S. Ct. 2494 (2021) ............................................................................................... 2, 4, 6, 9

**STATUTES**

31 U.S.C. § 5336(b) ................................................................................................................. 7

Administrative Procedure Act, 5 U.S.C. § 705 ................................................................ *passim*

Corporate Transparency Act (CTA), Section 6401 of the William M. (Mac) Thornberry National
    Defense Authorization Act (NDAA) for Fiscal Year 2021, Pub. L. 116-283
    ............................................................................................................................... *passim*

Higher Education Act of 1965, Pub. L. 89–329 ........................................................................ 6

**REGULATIONS**

31 C.F.R. 1010.380 .................................................................................................................... 5

86 Fed. Reg. 69920 (Dec. 8, 2021) ............................................................................................ 9

87 Fed. Reg. 59498 (Sept. 30, 2022) .............................................................................. 9, 10, 11

**RULES**

Federal Rule of Appellate Procedure (29)(a)(4)(E) ................................................................. 1

**OTHER AUTHORITIES**

Repealing Big Brother Overreach Act, H.R. 425, 119th Cong. (2025-26) ................................ 7

Repealing Big Brother Overreach Act, S.100, 119th Cong. (2025-26) ..................................... 7

Last month, this Court determined that the Corporate Transparency Act (CTA) "is unprecedented in its breadth and expands federal power beyond constitutional limits[,] mandat[ing] the disclosure of personal information from millions of private entities while intruding on an area of traditional state concern." Docket No. 30 at 3. Nothing has changed since the Court made that determination. Congress has not amended the CTA, nor has our Constitution or the traditional areas of state concern been altered. But the Government now moves this Court for a stay of its own order, claiming that the Supreme Court's staying of a nationwide preliminary injunction in a separate case mandates the staying of 5 U.S.C. § 705 relief here. Docket No. 33 at 1, 4. Not so. As explained more fully below, the Supreme Court's order in *McHenry v. Texas Top Cop Shop, Inc.*, No. 24A653, 2025 WL 272062, (U.S. Jan 23, 2025), says nothing about the CTA's constitutionality, nor does it require any action by this Court. This Court's previous order is the only thing currently protecting Plaintiffs, 32 million small businesses, and millions of other entities from having to comply with the CTA's "unprecedented" expansion of "federal power beyond constitutional limits." The Government has not met its burden to make a "strong showing" that it is likely to succeed on the merits, that it is irreparably harmed absent a stay, and that the equities favor a stay. Therefore, the Court should deny the Motion for Stay.

## **INTEREST OF *AMICUS CURIAE*** [1]

The National Federation of Independent Business, Inc. (NFIB) is the nation's leading small business association. NFIB's mission is to promote and protect the right of its members to own, operate, and grow their businesses. NFIB represents, in Washington, D.C., and all 50 state capitals,

---

[1] Although this Court is not governed by Federal Rule of Appellate Procedure (29)(a)(4)(E), *amicus curiae* still states that no counsel for any party authored this brief in whole or in part and no entity or person, other than *amicus curiae*, its members, or its counsel, made any monetary contribution intended to fund its preparation or submission.

the interests of its members. An affiliate of NFIB, the NFIB Small Business Legal Center (NFIB Legal Center) is a nonprofit, public interest law firm established to provide legal resources and be the voice for small businesses in the nation's courts through representation on issues of public interest affecting small businesses. To fulfill its role as the voice for small business, the NFIB Legal Center frequently files amicus briefs in cases that will impact small businesses.

*Amicus* has a significant interest in this case because the CTA requires over 32 million small businesses nationwide to report sensitive identifying beneficial ownership information (BOI). The overwhelming majority of *amicus*' members will be negatively impacted by the CTA's unprecedented breadth. *Amicus* can be helpful to the Court because it is a nationwide organization representing nearly 300,000 small businesses and is a plaintiff in a separate lawsuit challenging the CTA, *Texas Top Cop Shop, Inc. v. McHenry*. *Amicus* has also participated, by way of amicus brief, in CTA challenge appeals in the Fourth and Eleventh Circuits.

## ARGUMENT

The Court should deny the Government's Motion for Stay. In order to prevail in a stay motion, the moving party must make a "'strong showing' that it is 'likely to succeed on the merits,' that it will be 'irreparably injured absent a stay,' that the balance of equities favors it, and that a stay is consistent with the public interest." *Whole Woman's Health v. Jackson*, 141 S. Ct. 2494, 2495 (2021) (quoting *Nken v. Holder*, 556 U.S. 418, 434 (2009)). The first two factors are the "most critical" and "[i]t is not enough that the chance of success on the merits be 'better than negligible.'" *Nken*, 556 U.S. at 434 (quoted source omitted). The moving party's failure to prove just one of the factors necessitates the denial of the stay motion. Here, the Government fails to make a "strong showing" that it is likely to succeed on the merits, that it will be irreparably injured absent a stay, or that the equities favor it.

I.  **Based on the Current Landscape of CTA Litigation, the Government's Likelihood of Success is Negligible at Best.**

The Government must make a "strong showing" that it is likely to succeed on the merits. *Nken*, 556 U.S. at 434. By ignoring the current landscape of CTA litigation across the country and misinterpreting the Supreme Court's order in *Texas Top Cop Shop, Inc.*, No. 24A653 (Jan. 23, 2025), the Government paints a rosy picture of arguments this Court already considered prior to its initial order. *Compare* Docket No. 33 at 5-7 (Government Motion citing the presumption of constitutionality and arguing that the CTA is within Congress's Commerce and Necessary and Proper powers), *with* Docket No. 30 at 10–25 (this Court's order concluding that Plaintiffs were "likely to succeed on the merits" and thoroughly rejecting the same arguments the Government makes here about the Commerce and Necessary and Proper powers). Stepping outside of the Government's portrayal shows a much different picture.

The CTA litigation across the country reveals that Plaintiffs, and other CTA challengers, are thus far ahead on the proverbial scoreboard of likelihood of success on the merits. By *amicus*' count, five district courts have weighed in on the likelihood of success of CTA challenges. Of these five, three have held that the CTA challengers were likely to succeed on the merits. *See Smith. v. Dep't of Treasury*, No. 6:24-cv-336, 2025 WL 41924 (E.D. Tex. Jan. 7, 2025); *Texas Top Cop Shop, Inc. v. Garland*, No. 4:24-cv-478, 2024 WL 5049220 (E.D. Tex. Dec. 5, 2024); *Nat'l Small Bus. United v. Yellen*, 721 F. Supp. 3d 1260 (N.D. Ala. Mar. 1, 2024). Two of these five have concluded that the Government was likely to succeed on the merits. *See Community Ass'ns Inst. v. Yellen*, No. 1:24-cv-1597, 2024 WL 4571412 (E.D. Va. Oct. 24, 2024); *Firestone v. Yellen*, No. 3:24-cv-1034, 2024 WL 4250192 (D. Or. Sept. 20, 2024). One other court—the Western District of Michigan—declined to grant CTA challengers preliminary relief primarily based on a finding of no irreparable harm to them. *See Small Bus. Ass'n of Mich. v. Yellen*, No. 1:24-cv-00314

3

(W.D. Mich. Apr. 29, 2024) (oral argument transcript denying motion for preliminary injunction primarily based on no irreparable harm), ECF No. 25.[2]

For judges across the nation specifically addressing the likelihood of success on the merits, the score is 3-2 in favor of CTA challengers. Being generous to the Government and including the Western District of Michigan, the score can be said to be 3-3. Even so, the only court to address the constitutionality of the CTA beyond a posture of preliminary relief has resolved the issue against the Government. *Nat'l Small Bus. United*, 721 F. Supp. 3d at 1267, 1289 (granting summary judgment to CTA challengers based on the CTA "exceed[ing] the Constitution's limits on the legislative branch and lack[ing] a sufficient nexus to any enumerated power to be a necessary or proper means of achieving Congress' policy goals"). Therefore, the Government's likelihood of success is "negligible" at best, and certainly not the "strong showing" required to obtain a stay. *See Nken*, 556 U.S. at 434.

In claiming otherwise, the Government misinterprets the Supreme Court's order in *Texas Top Cop Shop, Inc.*, No. 24A653 (Jan. 23, 2025). According to the Government, the Supreme Court's grant of the *Texas Top Cop Shop, Inc.* stay application "necessarily reflects the Supreme Court's conclusions [] that the government has established a likelihood of success on the merits." *See* Docket No. 33 at 5.[3] A plain reading of the Supreme Court's order reveals no such thing. Only

---

[2] Judge Kacsmaryk, in the Northern District of Texas, recently denied a CTA challenger's motion for a preliminary injunction as moot based on the then-nationwide injunction from *Texas Top Cop Shop* being in place. *See Hotze v. Treasury*, No. 2:24-cv-210, 2024 WL 5248148 (N.D. Tex. Dec. 30, 2024). Nothing in Judge Kacsmaryk's order addressed the merits of success.

[3] *But see Whole Woman's Health*, 141 S. Ct. at 2495–96 (making clear that the decision on application for injunctive relief "do[es] not purport to resolve definitively any . . . substantive claim" and "is not based on any conclusion about the constitutionality" of the law at issue); *id.* at 2496 (Roberts, C.J., dissenting joined by Breyer and Kagan, JJ.) (noting that the Court's order on the application for injunctive relief clearly "cannot be understood as sustaining the constitutionality of the law at issue").

4

Justices Gorsuch and Jackson revealed their thoughts, with Justice Gorsuch focused on the scope of the district court's remedy ("government is entitled to a stay of the district court's *universal injunction*" (emphasis added)) and Justice Jackson focused on the lack of injury to the Government ("the applicant has failed to demonstrate sufficient exigency to justify our intervention"). We have no idea why the other seven justices voted the way they did, and for anyone to speculate at the expense of Plaintiffs and 32 million small businesses would be irresponsible.

Even if the Supreme Court's order spoke to the longstanding debate over nationwide preliminary injunctions under a court's equitable powers, it does not impact this Court's January 7th order granting relief under Section 705 of the Administrative Procedure Act. In *Texas Top Cop Shop, Inc.*, Judge Mazzant issued two distinct remedies: (1) a "nationwide injunction" as an equitable remedy; and (2) enjoining the beneficial ownership information reporting rule, 31 C.F.R. 1010.380, under 5 U.S.C. § 705. 2024 WL 5049220, at *35–37. Likewise, this Court issued two distinct remedies: (1) limited injunctive relief preventing enforcement against Plaintiffs as an equitable remedy; and (2) enjoining the beneficial ownership information reporting rule, 31 C.F.R. 1010.380, under 5 U.S.C. § 705. Docket No. 30 at 33–34. The APA authorizes preliminary or ultimate vacatur of agency rules, which is different than a court's equitable power to grant limited or nationwide preliminary relief. *See, e.g*, *Corner Post, Inc. v. Bd. of Governors of Fed. Reserve Sys.*, 603 U.S. 799, 827 (2024) (Kavanaugh, J., concurring) (noting "[t]he APA authorizes vacatur of agency rules" while describing government position to the contrary as "far-reaching," "newly minted," and "novel and wrong"); *Career Colls. & Schs. Of Tex. v. United States Dep't of Educ.*, 98 F.4th 220, 255 (5th Cir. 2024) ("Nothing in the text of Section 705, nor of Section 706, suggests that either preliminary or ultimate relief under the APA needs to be limited[.]"). Both this Court and Judge Mazzant cited *Career Colleges* for that proposition. Until the Supreme Court expressly

holds otherwise, *Career Colleges* remains binding authority regarding the availability of relief under the APA.[4]

In sum, the Supreme Court's order in *Texas Top Cop Shop, Inc.* mandates nothing of this Court regarding its January 7th order. They are two different cases, with different arguments, and different scopes of equitable relief. And the Supreme Court's four-sentence order says nothing about the Government's likelihood of success on the merits of the CTA's constitutionality. In contrast, the landscape of CTA litigation nationwide reveals that CTA challengers are ahead on the merits currently, with the Government's likelihood of success "negligible" at best, and certainly not the "strong showing" required.

## II. FinCEN's Own Delays Demonstrate that it is Not Irreparably Harmed Absent a Stay.

Beyond a "strong showing" of a likelihood of success on the merits, an applicant for a stay must prove that it will be "irreparably injured absent a stay." *Whole Woman's Health*, 141 S. Ct. at 2495 (quoting *Nken*, 556 U.S. at 434). The Government claims irreparable harm from the Court's enjoining the effectuation of a statute "enacted by the representatives of its people." Docket No. 33 at 6. But context reveals the speciousness of this claimed irreparable injury.

First, taken to its logical conclusion, the Government's alleged irreparable injury would mean that courts can never deem an act of Congress signed by the President, *i.e.*, the representatives of the people, unconstitutional. But this is exactly the Article III duty of courts under our judicial system. As Chief Justice Marshall wrote, "[i]t is emphatically the province and duty of the judicial department to say what the law is." *Marbury v. Madison*, 5 U.S. 137, 177 (1 Cranch 137) (1803). And which "representatives of the people" are determinative? While the

---

[4] The Supreme Court has granted certiorari in *Career Colleges*, but only to the Petition's question about the Higher Education Act of 1965. It did not grant the Petition's second question presented regarding preliminary relief. *See Dep't of Educ. V. Career Colls. & Schs. Of Tex*, No. 24-413.

Government claims this Court is irreparably harming it by blocking enforcement of the CTA, 104 members of the House of Representatives, and 26 members of the Senate are on record supporting a repeal of the unconstitutional CTA. *See* Repealing Big Brother Overreach Act, H.R. 425, 119th Cong. (2025-26); Repealing Big Brother Overreach Act, S.100, 119th Cong. (2025-26).

Second, the Government's own history regarding the CTA contradicts its claim of irreparable harm. The CTA became law on January 1, 2021, and directed the Financial Crimes Enforcement Network (FinCEN) to decide when reporting companies would need to comply. 31 U.S.C. § 5336(b)(5), (b)(1)(B). Instead of insisting on immediate compliance shortly after the NPRM comment period closed in early 2022—based on the claimed irreparable harm and national security interests the Government now relies on—FinCEN instead set the deadline for existing reporting companies nearly three years later on January 1, 2025. It is hard to understand why this Court's § 705 stay remaining in place for a few months while the judicial process plays out so irreparably harms the Government's interests, but a three-year period between FinCEN's initial NPRM and its ultimate compliance deadline for existing companies did not. *See Texas Top Cop Shop, Inc.*, No. 24A653 (Jackson, J., dissenting) ("[T]he Government deferred implementation on its own accord—setting an enforcement date of *nearly four years* after Congress enacted the law— despite the fact that the harms it now says warrant our involvement were likely to occur during that period." (emphasis in original)).

Even recent activity confirms that the Government's claim of irreparable harm is contradicted by its own actions. A few months ago, facing the same harm it now says requires an immediate stay, FinCEN granted numerous six-month extensions of BOI reports for certain entities, making most of these reports now due no later than April 23, 2025, and some due as late

7

as July 1, 2025.[5] The Fifth Circuit has expedited consideration of the appeal in *Texas Top Cop Shop, Inc.*, with oral argument calendared for April 1, 2025. *See Texas Top Cop Shop, Inc. v. Bondi*, No. 24-40792. If the Government can wait to collect BOI reports until late-April or even July from some entities, why is the harm irreparable from this Court's stay remaining in place for a couple of months while the Fifth Circuit decides either this or the *Texas Top Cop Shop, Inc.* appeal? Additionally, the Government promises the Court that it will delay compliance for all entities for another 30 days if granted the stay in order to "assess whether it is appropriate to modify the CTA's reporting requirements." Docket No. 33 at 1. From this, it appears that the irreparable injury to the Government only presents itself when a coequal branch of government exercises its constitutional authority, but not when FinCEN *sua sponte* decides otherwise. This Court should not be misled by the Government's claims of irreparable harm in its left hand, while its right hand plays loosey-goosey with the BOI reporting deadlines.

The Government is not irreparably harmed absent a stay of this Court's January 7th order staying the BOI reporting rule deadline under § 705. FinCEN's own history of delaying reporting for existing entities for three full years after its initial NPRM reveals as much, as does its continued nonchalant attitude, demonstrated by its actions, toward BOI reporting. Only in CTA litigation has FinCEN claimed a pressing immediacy for BOI reporting. Even here, the Government promises to delay reporting for 30 more days, itself contradicting claims of irreparable injury.

---

[5] *See* FinCEN Notices FIN-2024-NTC7 (extension to February 6, 2025), FIN-2024-NTC8 (extension to April 23, 2025), FIN-2024-NTC9 (extension to April 23, 2025), FIN-2024-NTC10 (extension to April 23, 2025), FIN-2024-NTC11 (extensions to April 23, 2025 and July 1, 2025).

8

III. **The Equities Favor the Tens of Millions of Entities under the CTA's Reach Because Reinstatement of the Reporting Rule Will Impose Nonrecoverable Time, Financial, and Privacy Costs.**

Once a movant has cleared the first two hurdles, it must then show that the balance of the equities is in its favor. *Whole Woman's Health*, 141 S. Ct. at 2495 (quoting *Nken*, 556 U.S. at 434). The Government says its side of the equities revolves around the "inherent harm of blocking a constitutional enactment" which "cannot be overcome by whatever burden plaintiffs face in complying with a validly enacted Act of Congress" and the § 705 stay "frustrat[ing] Treasury's efforts to implement the extant Final Rule, or to modify it, as warranted." Docket No. 33 at 6.

As an initial matter, the Government's premise that the CTA represents a "constitutional enactment" was preliminarily rejected by this Court just a few weeks ago and has been rejected by the only court to reach the merits of the CTA. *See* Docket No. 30; *Nat'l Small Bus. United*, 721 F. Supp. 3d at 1267, 1289.

On its claim that the § 705 stay "frustrate[s]" the Government from modifying the Final Rule, nothing in the Court's order does so. *Amicus* is pleased to see that the Government has promised to extend the compliance deadline for another 30 days if it receives a stay. But it is important to point out that *nothing* requires the Government to condition its promise on this Court's granting a stay, as it does here, and *nothing* prevents the Government from announcing an intention to delay enforcement of the compliance deadline while it reconsiders the Final Rule, regardless of what this Court decides on the stay motion. Not only has FinCEN admitted as much, but the text of the CTA confirms. In the words of FinCEN, "[t]he CTA authorizes FinCEN to determine the effective date of the BOI reporting rule." 86 Fed. Reg. 69920, 69945 (Dec. 8, 2021). Pursuant to this authorization, FinCEN set the effective date of the BOI reporting rule as January 1, 2024. 87 Fed. Reg. 59498, 59498 (Sept. 30, 2022). The CTA mandates that entities formed prior to the effective date of FinCEN's regulation "shall . . . submit" their BOI reports to FinCEN "not later

9

than 2 years after the effective date." 31 U.S.C. § 5336(b)(1)(B). Therefore, FinCEN has complete statutory authority, irrespective of this Court's January 7th order granting the § 705 stay, and regardless of its decision on the Motion for Stay Pending Appeal, to delay BOI reporting for existing entities up until January 1, 2026. If the Government is serious about wanting to modify the Final Rule or delay BOI reporting for existing entities, it is entirely free to do so as early as tomorrow, and Congress, or the "representatives of its people," has expressly permitted it to do so.

The equities favor the Plaintiffs and the tens of millions of small businesses that will be irreparably harmed by a stay. This Court's § 705 stay of the BOI reporting rule is the only thing protecting Plaintiffs, 32 million small businesses, and the millions of other entities impacted by the BOI reporting rule from significant and nonrecoverable compliance costs. "[C]omplying with a regulation later held invalid almost *always* produces the irreparable harm of nonrecoverable compliance costs." *Texas v. EPA*, 829 F.3d 405, 433 (5th Cir. 2016) (quoting *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 220–21 (1994) (Scalia, J., concurring joined by Thomas, J.) (emphasis in original)). FinCEN itself admitted that its reporting rule "will have a significant economic impact on a substantial number of small entities." 87 Fed. Reg. at 59549. In the first year alone, compliance includes 126.3 million hours and financial costs of $22.7 billion. *Id.* at 59585–86. Entities with a "simple structure" will need to spend 90 minutes on their BOI filings, while those with more complex structures could spend over 10 hours on reporting. *Id.* at 59573. The estimated financial cost to file initial BOI reports is between $85.14 and $2,614.87 per entity. *Id.* at 59559. If this Court grants the Government's stay request, Plaintiffs, small businesses, and others impacted by the BOI reporting rule will be subject to these nonrecoverable time and financial costs.

There is also the irreversible disclosing of sensitive and personal identifying information that would ensue from this Court granting a stay. This forced disclosure leads to a host of privacy and security concerns. *Id.* at 59520 (FinCEN recognizing "the privacy concerns associated with disclosure and retention of identity information.").

Perhaps most significant are the practical consequences from reinstating the BOI reporting rule's deadline. While the Government's promise of a 30-day extension for reporting is appreciated, it is illusory in the sense that it will not help entities subject to the rule. Chaos will ensue as soon as entities find out that the mandatory reporting deadline is back on. Those who must report will scramble to understand which individuals affiliated with their businesses are considered beneficial owners, collect this information, and fulfill the reporting obligations. Lawyers and accountants who assist with the BOI filings will be inundated with requests for assistance, no matter that the compliance deadline is delayed 30 days on an uncertain and shaky promise to "assess [the Government's] potential options" for "providing relief to lower-risk entities" or "amending the Final Rule." Docket No. 33 at 6. These entities will not have the ability or time to wait until the last moment to see if the Government indeed amends the Final Rule.

The equities and public interest weigh in favor of preserving the pre-CTA and BOI reporting rule status quo, which means keeping this Court's § 705 stay in effect. A contrary result will force tens of millions of entities into expending hours on their BOI reports, spending money for professional assistance with filing, and giving up their privacy. None of these can be recovered if the CTA is later deemed unconstitutional.

## CONCLUSION

This Court should deny Defendants' Motion for Stay Pending Appeal.

February 14, 2025  Respectfully submitted.

                                                   */s/ John C. Sullivan*
                                                   John C. Sullivan
                                                   **S|L LAW PLLC**
                                                   610 Uptown Boulevard, Suite 2000
                                                   Cedar Hill, Tx 75104
                                                   469.523.1351
                                                   john.sullivan@the-sl-lawfirm.com

                                                   *Counsel for Amicus Curiae*