**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**TYLER DIVISION**

| | | |
|---|---|---|
| SAMANTHA SMITH AND ROBERT MEANS, *Plaintiffs,* | § § § § | |
| v. | § § | Civil Action No. 6:24-CV-00336-JDK |
| UNITED STATES DEPARTMENT OF THE TREASURY, SCOTT BESSENT, in his official capacity as Secretary of the Treasury, THE FINANCIAL CRIMES ENFORCEMENT NETWORK, and ANDREA GACKI, in her official capacity as Director of FinCEN, *Defendants.* | § § § § § § § § § | |

**PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................................ 3

INTRODUCTION ........................................................................................................ 7

BACKGROUND ......................................................................................................... 8

    *Statutory Background* ...................................................................................... 8

    *The CTA Implementing Rule* ........................................................................... 8

    *FinCEN Amends the CTA Implementing Rule* ................................................ 9

    *The CTA Applies to Plaintiffs' LLCs* ............................................................... 9

    *Procedural Background* .................................................................................. 10

STANDARD OF REVIEW .......................................................................................... 11

ARGUMENT ............................................................................................................ 11

I.    A DISTRICT COURT MAY PROCEED ON THE MERITS WHILE PRELIMINARY RELIEF IS ON APPEAL ................................................................................... 11

II.   THE CTA IS UNCONSTITUTIONAL .................................................................. 12

    A.    The CTA exceeds Congress's powers under the Interstate Commerce Clause .................................................................................. 12

    B.    The CTA exceeds Congress's powers under the Necessary and Proper Clause ............................................................................................ 14

        1.    Substantial effects ..................................................................... 15

        2.    Foreign commerce ..................................................................... 18

        3.    Foreign affairs ........................................................................... 19

        4.    Taxing power ............................................................................. 20

III.  THE SUPREME COURT'S STAY IN *TEXAS TOP COP SHOP* DOES NOT PREVENT THIS COURT FROM GRANTING SUMMARY JUDGMENT ....................... 21

IV.  THE DEPARTMENT'S INTERIM FINAL RULE DOES NOT MOOT THIS CASE ............ 23

CONCLUSION ......................................................................................................... 27

CERTIFICATE OF SERVICE ...................................................................................... 27

TABLE OF AUTHORITIES

*Cases:*                                                                      *Page(s):*

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) .......................................................................................... 11

*Baston v. United States,*
580 U.S. 1182 (2017) ....................................................................................... 19

*Bittner v. United States,*
598 U.S. 85 (2023) ............................................................................................ 17

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) .......................................................................................... 11

*Def. Distributed v. United States Dep't of State,*
838 F.3d 451 (5th Cir. 2016) .......................................................................... 22

*Encino Motorcars, LLC v. Navarro,*
579 U.S. 211 (2016) .......................................................................................... 25

*Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,*
528 U.S. 167 (2000) .......................................................................................... 24

*GDF Realty Invs., Ltd. v. Norton,*
326 F.3d 622 (5th Cir. 2003) .................................................................... 15, 18

*Gonzales v. Raich,*
545 U.S. 1 (2005) ....................................................................................... 13, 15

*Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau,*
740 F. Supp. 3d 509 (N.D. Tex. July 10, 2024) ............................................ 13

*Jackson v. Noem,*
132 F.4th 790 (5th Cir. 2025) .................................................................... 23, 26

*Johnson v. Cooper T. Smith Stevedoring Co.,*
74 F.4th 268 (5th Cir. 2023) ........................................................................... 11

*Loper Bright Enters. v. Raimondo,*
603 U.S. 369 (2024) .......................................................................................... 25

*Matsushita Electronic Industrial Co. v. Zenith Radio Corp.,*
475 U.S. 574 (1986) .......................................................................................... 11

*McCulloch v. Maryland,*
    17 U.S. (4 Wheat.) 316 (1819) ................................................................. 14, 20

*McFaul v. Valenzuela,*
    684 F.3d 564 (5th Cir. 2012) ............................................................................ 11

*McHenry v. Tex. Top Cop Shop, Inc.*, 145 S. Ct. 1 (2025)........................... 7, 10, 21, 22

*Nat'l Small Bus. United v. Yellen,*
    721 F. Supp. 3d 1260 (N.D. Ala. 2024).......................................... 13, 17, 20, 24

*NFIB v. Sebelius,*
    567 U.S. 519 (2012) .......................................................................... 14, 16, 20

*Nken v. Holder,*
    556 U.S. 418 (2009) ........................................................................................ 22

*Parents Involved in Community Schools v. Seattle School Dist. No. 1,*
    551 U.S. 701 (2007) ........................................................................................ 24

*Perez v. United States,*
    402 U.S. 146 (1971) ........................................................................................ 13

*PG&E v. FERC,*
    113 F.4th 943 (D.C. Cir. 2024)........................................................................ 25

*Russello v. United States,*
    464 U.S. 16 (1983) .......................................................................................... 17

*Ry. Lab. Executives' Ass'n v. City of Galveston, Tex.,*
    898 F.2d 481 (5th Cir. 1990) ........................................................................... 12

*Satanic Temple, Inc. v. Tex. Health & Hum. Serv. Comm'n,*
    79 F.4th 512 (5th Cir. 2023) ............................................................................ 11

*Terkel v. CDC,*
    521 F. Supp. 3d 662 (E.D. Tex. 2021)................................................... 13, 15, 16

*Tex. Top Cop Shop, Inc. v. Garland,*
    Civil Action No. 4:24-CV-478, 2024 U.S. Dist. LEXIS 218294
    (E.D. Tex. Dec. 3, 2024).................................................. 7, 10, 13, 14, 21, 22, 24

*U.S. Navy Seals 1-26 v. Biden,*
    72 F.4th 666 (5th Cir. 2023) ............................................................................ 26

*United States v. Abbott,*
    92 F.4th 570 (5th Cir. 2024) .......................................................................... 12

*United States v. Anderson,*
    771 F.3d 1064 (8th Cir. 2014) ....................................................................... 13

*United States v. Ballinger,*
    395 F.3d 1218 (11th Cir. 2005) ..................................................................... 13

*United States v. Guzman,*
    591 F.3d 83 (2d Cir. 2010) ............................................................................ 13

*United States v. Lopez,*
    514 U.S. 549 (1995) ............................................................. 12, 14, 15, 16, 18

*United States v. Lynd,*
    321 F.2d 26 (5th Cir. 1963) .......................................................................... 12

*United States v. Morrison,*
    529 U.S. 598 (2000) .................................................................................. 15, 18

*United States v. Rife,*
    33 F.4th 838 (6th Cir. 2022) ......................................................................... 19

*United States v. Sullivan,*
    451 F.3d 884 (D.C. Cir. 2006) ...................................................................... 13

*United States v. Whaley,*
    577 F.3d 254 (5th Cir. 2009) ........................................................................ 13

*West Virginia v. EPA,*
    597 U.S. 697 (2022) .............................................................................. 23, 24, 25

*Williams v. Homeland Ins. Co.,*
    18 F.4th 806 (5th Cir. 2021) ......................................................................... 19

### Statutes, Rules, & Regulations:

5 U.S.C.
    § 705 .............................................................................................................. 10

31 U.S.C.
    § 5318(a)(7) ..................................................................................................... 9
    § 5335(a)(1) ................................................................................................... 17

§ 5336.................................................................. 8, 9, 10, 16, 17, 24, 25

Tex. Tax Code § 171.203 .................................................................. 8

87 Fed. Reg. 59,498 (Sept. 30, 2022) ...................................... 8, 9

90 Fed. Reg. 13,688 (Mar. 26, 2025)................................... 9, 22, 25

Fed. R. Civ. P. 56(a) ................................................................... 11

William M. (Mac) Thornberry National Defense Authorization
    Act for Fiscal Year 2021, Pub. L. No. 116-283,
    134 Stat. 3388 (2021) ....................................... 8, 13, 17, 25

***Other Authorities:***

16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3921.2 (3d ed.) ............... 11

*Beneficial Ownership Information,*
    Financial Crimes Enforcement Network (Feb. 13, 2025),
    https://web.archive.org/web/20250213094954/https://fincen.gov/boi .............. 21

Corporate Transparency Act of 2019, H.R. 2513, 116th Cong. § 3
    (adding 31 U.S.C. § 5333(c)(1)) (2019), *reprinted in* H.R. Rept.
    No. 116-227, at 5 (2019), *available at*
    https://www.congress.gov/bill/116th-congress/house-bill/2513/text/ ............. 16

Randy E. Barnett, *The Original Meaning of the Commerce Clause,*
    68 U. Chi. L. Rev. 101 (2001)............................................. 19

Repealing Big Brother Overreach Act, S. 100 & H.R. 425, 119th Cong. (2025) ....... 24

1 S. Johnson, A Dictionary of the English Language 422 (6th ed. 1785) ................. 19

Plaintiffs Samantha Smith and Robert Means respectfully move the Court for summary judgment pursuant to Federal Rule of Civil Procedure 56. There exists no genuine dispute of material fact in this case and Plaintiffs are entitled to judgment as a matter of law. Plaintiffs request this Court grant summary judgment, declaring that the CTA exceeds Congress's enumerated powers.

## INTRODUCTION

This case involves a constitutional challenge to the CTA, a federal mandate that requires Plaintiffs and 32.6 million other small businesses disclose sensitive personal information to a federal database. This disclosure is required regardless of whether a person is suspected of a crime or engages in interstate commerce.

Plaintiffs bring a straightforward challenge under the U.S. Constitution. There are no factual disputes, and the core legal issues remain unchanged from the parties' briefing on preliminary relief. *See* Docket Nos. 7, 13, 14. This Court granted Plaintiffs preliminary relief, holding that the CTA is likely unconstitutional. *See* Docket No. 30. Since then there have been some activities at the appellate level in this and similar cases, but none of those actions prevent this Court from reaching the merits on summary judgment.

Defendants appealed this Court's preliminary injunction, and this Court stayed relief pending appeal. *See* Docket Nos. 32, 39. Another court also granted preliminary relief based on similar constitutional claims, but that relief has been stayed pending appeal. *Tex. Top Cop Shop, Inc. v. Garland*, Civil Action No. 4:24-CV-478, 2024 U.S. Dist. LEXIS 218294 (E.D. Tex. Dec. 3, 2024), *stay granted pending appeal sub nom McHenry v. Tex. Top Cop Shop, Inc.*, 145 S. Ct. 1 (2025). Those stays are based on equitable factors relevant to preliminary relief, not permanent relief.

Because there are no factual disputes and the future of this Court's preliminary relief is uncertain, Plaintiffs believe that proceeding to final judgment is the best use of this Court's resources.

## BACKGROUND

### *Statutory Background*

Congress enacted the CTA on January 1, 2021. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, §§ 6401–03, 134 Stat. 3388, 4604–25 (2021) (codified at 31 U.S.C. § 5336). The CTA requires both an applicant and beneficial owner of certain entities created under state law to file a report with Financial Crimes Enforcement Network (FinCEN) containing sensitive personal information. 31 U.S.C. § 5336(b)(1)(A). This includes the individual's name, date of birth, current address, and a unique identifying number from an identification document or a number issued by FinCEN. *Id.* § 5336(b)(2)(A). These requirements exceed what Plaintiffs must report under state law. Decl. of Samantha Smith, Docket No. 7-1 ¶ 13; Decl. of Robert Means, Docket No. 7-2 ¶ 12; *see* Tex. Tax Code § 171.203. The statute directed the Secretary of the Treasury to choose by regulation an effective date for the reporting requirement. 31 U.S.C. § 5336(b)(5). A person who fails to make one of the CTA's required reports is subject to civil penalties up to $500 per day and criminal penalties up to a $10,000 fine and two years in prison. 31 U.S.C. § 5336(h)(1), (3).

### *The CTA Implementing Rule*

FinCEN promulgated the original implementing rule in September 2022. Beneficial Ownership Information Reporting Requirements, 87 Fed. Reg. 59,498 (Sept. 30, 2022) (codified at 31 C.F.R. pt. 1010). The implementing rule provided additional details on the content of beneficial ownership reports. *Id.* The implementing rule originally required entities formed before January 1, 2024 to report by January 1, 2025. 31 U.S.C. § 5336(b)(1)(B); 87 Fed. Reg. at 59,592 (originally codified at 31 C.F.R. § 1010.380(a)(1)(iii) (2024)). For entities formed on or after January 1, 2024, this information had to be reported within 30 days of formation or

registration to do business in the United States. 31 U.S.C. § 5336(b)(1)(C); 87 Fed. Reg. at 59,591–92 (originally codified at 31 C.F.R. § 1010.380(a)(1)(i)–(ii) (2024)).

### FinCEN Amends the CTA Implementing Rule

Following two preliminary injunctions against the CTA and this Court's stay of the implementing rule, FinCEN issued an interim final rule amending the original implementing rule. Beneficial Ownership Information Reporting Requirement Revision and Deadline Extension, 90 Fed. Reg. 13,688 (Mar. 26, 2025) (amending 31 C.F.R. § 1010.380) [hereafter "Interim Final Rule" or "IFR"]. This rule made two major changes. First, it invoked the Secretary's exemption powers at 31 U.S.C. §§ 5318(a)(7) and 5336(a)(11)(B)(xxiv) to exempt all domestic entities and United States persons from the CTA's reporting requirements. *Id.* at 13,690, 13,697 (amending 31 C.F.R. § 1010.380(c)(2)(xxiv), *id.* § 1010.380(d)(4)). Second, it removed all references to the original January 1, 2025 compliance deadline and sent the new deadline at April 25, 2025. *Id.* at 13,697 (codified at 31 C.F.R. § 1010.380(a)(1)(ii)). The Interim Final Rule became effective on March 26, 2025, the date of publication. *Id.* at 13,689.

### The CTA Applies to Plaintiffs' LLCs

Plaintiffs are Texas residents who each own a Texas LLC to hold property. *See* Decl. of Samantha Smith, Docket No. 7-1 ¶¶ 6–15; Decl. of Robert Means, Docket No. 7-2 ¶¶ 1–12. Neither LLC engages in interstate commerce nor holds any interstate or foreign assets. Compl., Docket No. 1 ¶ 43; Decl. of Samantha Smith, Docket No. 7-1 ¶ 7; Decl. of Robert Means, Docket No. 7-2 ¶ 4. Under the CTA's statutory definitions, each Plaintiff is the beneficial owner of their respective LLCs, and they are also the applicants because they filed the formation documents with the Texas Secretary of State. Decl. of Samantha Smith, Docket No. 7-1 ¶¶ 11–12; Decl. of Robert Means, Docket No. 7-2 ¶¶ 10–11. Neither Plaintiff has filed a beneficial ownership report with FinCEN. *See* Decl. of Samantha Smith, Docket No. 7-1 ¶ 14; Decl. of Robert Means, Docket No. 7-2 ¶ 13. The CTA continues to apply on its face to Smith and

Means because they are each the beneficial owners of a limited liability company created by filing a document with the Texas Secretary of State. *See* 31 U.S.C. § 5336(a)(11)(A)(i).

### Procedural Background

Plaintiffs filed their complaint on September 12, 2024. *See* Docket No. 1. Plaintiffs then filed a motion for preliminary injunction and relief under 5 U.S.C. § 705 on September 17. *See* Docket No. 7. The Court held a hearing on the preliminary relief on December 6. The Court then issued an order and opinion granting a preliminary injunction against the CTA and a stay of the implementing rule on January 7, 2025. *See* Docket No. 30.

During litigation for this case, another division of the U.S. District Court for the Eastern District of Texas issued a nationwide injunction and stay on December 3, 2024. *Tex. Top Cop Shop, Inc. v. Garland*, Civil Action No. 4:24-CV-478, 2024 U.S. Dist. LEXIS 218294, at *112–*113 (E.D. Tex. Dec. 3, 2024). The government appealed that order to the Fifth Circuit. The Fifth Circuit motions panel granted the government's motion to stay the preliminary injunction pending appeal. *Tex. Top Cop Shop, Inc. v. Garland*, No. 24-40792, 2024 U.S. App. LEXIS 32565, at *9 (5th Cir. Dec. 23, 2024). Then the merits panel vacated the motion panel's order, effectively reinstating the preliminary injunction. *Tex. Top Cop Shop, Inc. v. Garland*, No. 24-40792, 2024 U.S. App. LEXIS 32702, at *4 (5th Cir. Dec. 26, 2024). Following the Fifth Circuit merits panel's order the government sought a stay from the Supreme Court, which was granted on January 23, 2025. *McHenry v. Tex. Top Cop Shop, Inc.*, 145 S. Ct. 1, 1 (2025).

Defendants appealed this Court's order and opinion granting preliminary relief. *See* Docket No. 32; *Smith v. Dep't of the Treasury*, No. 25-40071 (5th Cir.). At Defendants' request, this Court stayed its preliminary relief pending appeal. Docket No. 39. Defendants' appeal remains pending, but the Fifth Circuit recently placed the

appeal in abeyance. Docket No. 40, *Smith v. Dep't of the Treasury*, No. 25-40071 (5th Cir. May 20, 2025).

**STANDARD OF REVIEW**

Summary judgment is proper if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986) (same). The movant bears the initial burden of demonstrating there is no genuine dispute of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once it has done so, the burden of production shifts to the non-movant, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electronic Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Although "evidence is viewed in the light most favorable to the nonmoving party," *Johnson v. Cooper T. Smith Stevedoring Co.*, 74 F.4th 268, 272 (5th Cir. 2023), "[s]ummary judgment may not be thwarted by conclus[ory] allegations, unsupported assertions, or presentation of only a scintilla of evidence." *McFaul v. Valenzuela*, 684 F.3d 564, 571 (5th Cir. 2012).

**ARGUMENT**

**I.    A DISTRICT COURT MAY PROCEED ON THE MERITS WHILE PRELIMINARY RELIEF IS ON APPEAL**

As an initial matter, this Court retains jurisdiction to rule on the merits of this case while the preliminary relief is on appeal. Wright & Miller's Federal Practice explains "[o]rdinarily an interlocutory injunction appeal under § 1292(a)(1) does not defeat the power of the trial court to proceed further with the case." 16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3921.2 (3d ed.). The Fifth Circuit has applied this rule in several cases to allow plaintiffs to proceed on the merits while the parties appealed preliminary relief. *See, e.g.*, *Satanic Temple, Inc. v. Tex. Health & Hum. Serv. Comm'n*, 79 F.4th 512, 514 (5th Cir. 2023) ("The district court had jurisdiction

11

to proceed on the merits of the case. An appeal from a grant or denial of a preliminary injunction does not inherently divest the district court of jurisdiction or otherwise restrain it from taking other steps in the litigation."); *United States v. Abbott*, 92 F.4th 570, 573 (5th Cir. 2024) (Willett, J., concurring) ("the district court has jurisdiction to proceed to trial while we review *en banc* the factual, historical, and legal issues on appeal from the preliminary injunction."); *Ry. Lab. Executives' Ass'n v. City of Galveston, Tex.*, 898 F.2d 481, 481 (5th Cir. 1990); *United States v. Lynd*, 321 F.2d 26, 28 (5th Cir. 1963). The Fifth Circuit entered an order holding in abeyance the Department's appeal, not the entire case. Docket No. 40 at 3, *Smith v. Dep't of the Treasury*, No. 25-40071 (5th Cir. May 20, 2025). Thus, this Court retains jurisdiction to decide this motion for summary judgment.

## II. THE CTA IS UNCONSTITUTIONAL

This Court's order and opinion granting preliminary relief found that Plaintiffs are likely to succeed on the merits of their claim. Docket No. 30 at 10. For those same reasons, Plaintiffs can show actual success on the merits. Although there has been much litigation in this case and in related challenges to the CTA, no appellate court has decided the merits in a way that contradicts this Court's January 7 opinion and order.

### A. The CTA exceeds Congress's powers under the Interstate Commerce Clause.

This Court previously held that the CTA likely exceeds Congress's Interstate Commerce Clause Powers because it does not regulate a channel or instrumentality of commerce. Docket No. 30 at 12–15. Congress's interstate commerce powers fall into three broad categories. *United States v. Lopez*, 514 U.S. 549, 558 (1995). The first two categories—channels and instrumentalities of commerce—arise under the Interstate Commerce Clause itself. *Id.* The third category involves activities that substantially affect interstate commerce and arises from the Necessary and Proper Clause.

*Gonzales v. Raich*, 545 U.S. 1, 34 (2005) (Scalia, J., concurring). The Fifth Circuit and this Court have explicitly adopted Justice Scalia's framing—that the power to regulate substantial effects on commerce arises from the Necessary and Proper Clause.[1] *United States v. Whaley*, 577 F.3d 254, 260 (5th Cir. 2009); *Terkel v. CDC*, 521 F. Supp. 3d 662, 671 (E.D. Tex. 2021), *appeal dismissed as moot without vacating judgment*, 15 F.4th 683, 685 (5th Cir. 2021).

The CTA does not regulate channels or instrumentalities of interstate commerce. Channels of interstate commerce involve the highways, waterways, and airways used to transport goods and people in interstate commerce. *Perez v. United States,* 402 U.S. 146, 150 (1971). Instrumentalities of interstate commerce are the things that move in interstate commerce, such as people and goods, and the automobiles, boats, or airplanes that move them. *Id.*

Nowhere does the CTA reference any channel or instrumentality of commerce—nor does it discuss commerce at all beyond the desire to "protect" interstate commerce. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6402(5)(C), 134 Stat. 3388, 4604 (2021); *Tex. Top Cop Shop, Inc. v. Garland*, No. 24-40792, 2024 U.S. App. LEXIS 32565, at *56 (5th Cir. Dec. 23, 2024) (citing *Nat'l Small Bus. United v. Yellen*, 721 F. Supp. 3d 1260, 1278 (N.D. Ala. 2024)). Instead, the CTA regulates the activities of private entities formed under state law. These entities are not the "planes, trains, and automobiles" of commerce, nor the "the persons associated with them." *Hobby Distillers Ass'n v. Alcohol & Tobacco Tax & Trade Bureau*, 740 F. Supp. 3d 509, 531 (N.D. Tex. July 10, 2024) (citing *United States v. Ballinger*, 395 F.3d 1218, 1226 (11th Cir. 2005)). If a private company were considered a channel or instrumentality of

---

[1]    Several other circuits have also adopted this approach to the substantial effects test. *See, e.g.*, *United States v. Guzman*, 591 F.3d 83, 91 (2d Cir. 2010) (interpreting *Raich* as a Necessary and Proper Clause case); *United States v. Sullivan*, 451 F.3d 884, 888-90 (D.C. Cir. 2006) (same); *United States v. Anderson*, 771 F.3d 1064, 1068-71 (8th Cir. 2014) (same).

commerce "then Congress could regulate any company, in any way, all the time." *Tex. Top Cop Shop*, 2024 U.S. App. LEXIS 32565, at *56. No court has adopted such an expansive reading of the channels or instrumentalities of commerce. *Id.* (citing *Lopez*, 514 U.S. at 558–59).

The CTA does not regulate a channel or instrumentality of interstate commerce. Therefore, Plaintiffs have shown actual success on its claim that the CTA is not a constitutional exercise of the Interstate Commerce Clause.

### B. The CTA exceeds Congress's powers under the Necessary and Proper Clause

Because the CTA cannot be justified under the Interstate Commerce Clause itself, Defendants attempt to justify the CTA as a necessary and proper extension of several enumerated powers. These include interstate commerce, foreign commerce, foreign affairs, and taxation. But the Necessary and Proper Clause cannot be stretched to cover the CTA.

Any invocation of the Necessary and Proper Clause's implied powers must be examined "carefully to avoid creating a general federal authority akin to the police power." *NFIB v. Sebelius*, 567 U.S. 519, 536 (2012). This includes determining whether the relationship to the enumerated power is too attenuated, or if invoking an enumerated power is merely a "pretext" to pass laws for other purposes. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 423 (1819). When a law exceeds those limits, courts have the "painful duty" of holding the law unconstitutional. *Id.* To meet its burden, the government must show that the regulation is both necessary—*i.e.,* "plainly adapted" to the regulation of interstate commerce—and proper—*i.e.*, consistent "with the letter and spirit of the constitution." *NFIB*, 567 U.S. at 537 (quoting *McCulloch*, 17 U.S. (4 Wheat.) at 421).

### 1.    Substantial effects

As Justice Scalia explained in *Raich*, the "plainly adapted" standard effectively tracks the evidence-based, federalism-sensitive form of rational basis applied in *Lopez* and *Morrison*. *See Gonzales v. Raich*, 545 U.S. 1, 35–36 (2005) (Scalia, concurring). This includes four significant considerations: (1) the economic character of the intrastate activity; (2) whether the regulation contains a "jurisdictional element" that may "establish whether the enactment is in pursuance of Congress' regulation of interstate commerce;" (3) any congressional findings regarding the effect of the regulated activity on commerce among the States; and (4) attenuation in the link between the regulated intrastate activity and commerce among the States. *GDF Realty Invs., Ltd. v. Norton*, 326 F.3d 622, 628–29 (5th Cir. 2003) (citing *United States v. Morrison*, 529 U.S. 598, 609–12 (2000)). This Court already rightly held that the CTA fails all four considerations. Docket No. 30 at 24.

*First,* this Court held the CTA does not regulate economic activity. Docket No. 30 at 16–19. When considering whether an activity is economic, courts look "only to the expressly regulated activity" itself, not its downstream consequences. *GDF Realty*, 326 F.3d at 634. The motivations for the activity or its potential economic effects are immaterial for this part of the analysis. *See id.* at 633. Although the Supreme Court has allowed the government to aggregate economic activity to measure its substantial effect on commerce, it has never relied on aggregation of noneconomic activity. *GDF Realty*, 326 F.3d at 635 (quoting *Morrison*, 529 U.S. at 613).

This Court recognized that the CTA's triggering activity is entity formation and continued existence under state law. Docket No. 30 at 17–18. Entity formation is not "the production, distribution, and consumption of commodities" *Raich,* 545 U.S. at 25, or "the exchange of goods and services," *GDF Realty*, 326 F.3d at 629. Instead, entity formation is more akin to evicting a tenant under state law, *Terkel*, 521 F.

15

Supp. 3d at 671, or possessing a firearm in a school zone, *Lopez*, 514 U.S. at 561. The government cannot rely on a "prophesied future activity" to regulate conduct today. *NFIB*, 567 U.S. at 557. That is especially true when an entity that does not operate at all still falls under the CTA's regulations. *See* 31 U.S.C. § 5336(a)(11)(B)(xxiii); Docket No. 30 at 19.

Forming an entity and its mere continued existence is not an economic activity and cannot be aggregated in search of a substantial effect on interstate commerce. Therefore, the CTA fails the first consideration.

*Second*, this Court held the CTA has no jurisdictional element that ties its regulations to activities with a substantial effect on interstate commerce. Docket No. 30 at 20. Beyond the reasons stated in the Court's opinion, there are two additional reasons this factor cuts against the CTA's constitutionality: (1) Congress removed the CTA's jurisdictional element; and (2) the *expressio unius* cannon.

To begin, Congress affirmatively removed the jurisdictional element included in the original CTA bill text. *See* Corporate Transparency Act of 2019, H.R. 2513, 116th Cong. § 3 (adding 31 U.S.C. § 5333(c)(1)) (2019), *reprinted in* H.R. Rept. No. 116-227, at 5 (2019), *available at* https://www.congress.gov/bill/116th-congress/house-bill/2513/text/. The first version of the CTA introduced in Congress required that violations "affect interstate or foreign commerce." *Id.* This language was removed from the final bill without explanation. *Compare id. with* 31 U.S.C. § 5336(h) (violations need not affect interstate or foreign commerce). Regardless of the reason, Congress's deliberate decision not to limit the CTA to entities engaged in interstate transactions undermines Defendants' claim that the CTA is actually about interstate commerce.

Additionally, Congress knows how to include an interstate commerce jurisdictional element. In fact, just two sections before the CTA in the same bill, Congress defined "monetary transaction" (for money laundering purposes) as "the

16

deposit, withdrawal, transfer, or exchange, *in or affecting interstate or foreign commerce*, of funds or a monetary instrument". William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6313(a), 134 Stat. 3388, 4596 (2021) (codified at 31 U.S.C. § 5335(a)(1)) (emphasis added). Yet Congress omitted a similar jurisdictional element in the CTA. Under the *expressio unius* canon, courts assume that when Congress uses a phrase in one place and not in another the omission is intentional. *See, e.g.*, *Russello v. United States*, 464 U.S. 16, 23 (1983) ("[Where] Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion."). Sections 5335 and 5336 are both part of the Bank Secrecy Act (BSA), *see* 31 U.S.C. § 5311 note, and the Supreme Court reads BSA provisions together for the purposes of statutory interpretation. *Bittner v. United States*, 598 U.S. 85, 94 (2023) (applying the *expressio unius* canon to the BSA). The lack of a jurisdictional element and Congress's affirmative act to remove the jurisdictional element present in an earlier draft means the CTA fails the second consideration.

*Third,* this Court held the CTA lacks findings that tie its regulations to interstate commerce. Docket No. 30 at 20–22. The CTA's sense of Congress section states that malign actors may use for illicit purposes some of the two million new entities created each year. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116-283, § 6402(1), (3)–(4), 134 Stat. 3388, 4604 (2021). But determined criminals may use any number of methods to perpetuate and conceal their crimes. That an otherwise innocent tool may be used to facilitate crime does not by itself justify Congress's exercise of the commerce power. Moreover, these vague statements do not sufficiently demonstrate that the CTA fills an essential gap in a broader regulatory scheme. *Nat'l Small Bus. United*, 721 F. Supp. 3d at 1284–86. Instead, the CTA is a single-subject, non-economic law that is

far from essential to combatting interstate money laundering. *Id.* This lack of findings tying the CTA to interstate commerce or a broader regulatory scheme means the CTA fails the third consideration.

*Fourth,* the Court held any link between the CTA and interstate commerce is too attenuated for the CTA to be a "necessary" extension of Congress's interstate commerce power. Docket No. 30 at 22–24. Forming or owning an entity under state law does not have a self-evident effect on interstate commerce. Because formation and ownership are not themselves economic activities, those activities cannot be aggregated to create a substantial effect on interstate commerce. *GDF Realty*, 326 F.3d at 638. The reporting requirement is not an essential part of a broader regulatory scheme. *See Lopez*, 514 U.S. at 561. Thus the CTA's regulation is too attenuated to effects on interstate commerce and it fails the fourth consideration.

Moreover, if the government succeeds here, there is no limiting principle to the interstate commerce clause. At oral argument for preliminary relief, counsel could not articulate a limiting principle. Lacking a limiting principle proved fatal in *Lopez* and *Morrison*, and it is fatal here. *See Morrison*, 529 U.S. at 615; *Lopez*, 514 U.S. at 564–65. This Court found that the CTA failed all four of *Morrison*'s considerations. Docket No. 30 at 24. For those reasons, and for the reasons set forth above, Plaintiffs have shown actual success on the merits that the CTA cannot be justified under Congress's interstate commerce power, even when supplemented by the Necessary and Proper Clause.

### 2. Foreign commerce

For the same reasons that the CTA does not regulate channels or instrumentalities of interstate commerce, this Court found the CTA also does not regulate those channels or instrumentalities of foreign commerce. Docket No. 30 at 24–26. That leaves the CTA's substantial effects on foreign commerce. But in the eighty years since the Supreme Court recognized the substantial effects test, the

Court "has not extended it to Congress's power to regulate under the Foreign Commerce Clause." *United States v. Rife*, 33 F.4th 838, 843 (6th Cir. 2022); *see also Baston v. United States*, 580 U.S. 1182, 1183 (2017) (Thomas, J., dissenting from denial of certiorari) (noting that the Supreme Court "has never thoroughly explored the scope of the foreign commerce clause"). Neither has the Fifth Circuit. Lacking such precedent, courts are bound to apply the original meaning of the Foreign Commerce Clause. *See Williams v. Homeland Ins. Co.*, 18 F.4th 806, 818 (5th Cir. 2021) (Ho, J., concurring).

The Foreign Commerce Clause's original meaning leaves no room for the substantial effects test. At the founding, commerce "meant 'trade' or economic 'intercourse,' which consisted of 'exchange of one thing for another,' 'interchange,' or 'traffick.'" *United States v. Rife*, 33 F.4th 838, 842 (6th Cir. 2022) (quoting 1 S. Johnson, A Dictionary of the English Language 422 (6th ed. 1785)). The term did not include a broader set of economic activities, such as manufacturing or agriculture, nor activities that merely affect commerce. *Id.*; Randy E. Barnett, *The Original Meaning of the Commerce Clause*, 68 U. Chi. L. Rev. 101, 112–13 (2001). Thus the Foreign Commerce Clause, even when supplemented by the Necessary and Proper Clause, cannot be read to regulate activities with a substantial effect on foreign commerce.

The CTA does not regulate foreign commerce or trade, and Congress's foreign commerce power does not include activities with a substantial effect on foreign commerce. Thus, the CTA falls outside the Foreign Commerce Clause, even when supplemented by the Necessary and Proper Clause. Therefore, the CTA is not a constitutional exercise of Congress's foreign commerce powers.

### 3.    Foreign affairs

Outside the Foreign Commerce Clause, the foreign affairs powers stem from extensions of Congress's powers over immigration, to declare war, and to raise and

govern an army and navy. *Tex. Top Cop Shop, Inc. v. Garland*, Civil Action No. 4:24-CV-478, 2024 U.S. Dist. LEXIS 218294, at *86 (E.D. Tex. Dec. 3, 2024). This Court found these implied powers are even more attenuated to the CTA's purposes than the Foreign Commerce Clause. Docket No. 30 at 26–28. That is because the CTA is a purely domestic statute, even if some foreign actors use entity formation for illicit activities. *Tex. Top Cop Shop*, 2024 U.S. Dist. LEXIS 218294, at *85; *Nat'l Small Bus. United v. Yellen*, 721 F. Supp. 3d 1260, 1275 (N.D. Ala. 2024). Two other courts refused to uphold the CTA based on these nebulous foreign affairs powers. *Tex. Top Cop Shop*, 2024 U.S. Dist. LEXIS 218294, at *96; *Nat'l Small Bus. United*, 721 F. Supp. 3d at 1277. For those same reasons, the CTA is not a constitutional exercise of Congress's ancillary powers over foreign affairs.

### 4.    Taxing power

Finally, this Court held the CTA is not a necessary and proper extension of Congress's taxing power. Docket No. 30 at 28–30. The CTA is not a tax. *Nat'l Small Bus. United*, 721 F. Supp. 3d at 1288. But Defendants argue the CTA provides necessary information to collect taxes and prosecute tax evasion. Nevertheless, the Necessary and Proper Clause cannot support expanding the taxing power to cover a law like the CTA. Doing so could justify "any law that provided for the collection of information useful for tax administration and provided tax officials with access." *Id.* at 1289. And there is no precedent for such a broad reading of the taxing power. *Cf. NFIB v. Sebelius*, 567 U.S. 519, 550 (2012) ("sometimes the most telling indication of a severe constitutional problem is the lack of historical precedent for Congress's action." (cleaned up)). Such a reading also violates the Necessary and Proper Clause's basic tenants that a law be "plainly adapted" to the enumerated power and consistent "with the letter and spirit of the constitution." *NFIB*, 567 U.S. at 537 (quoting *McCulloch*, 17 U.S. (4 Wheat.) at 421). A limitless power to require reporting that is "useful" tax administration is not plainly adapted to the taxing power nor consistent

with the constitution's letter and spirit. Therefore, the CTA is not a constitutional exercise of Congress's taxing powers, and summary judgment is proper.

## III. THE SUPREME COURT'S STAY IN *TEXAS TOP COP SHOP* DOES NOT PREVENT THIS COURT FROM GRANTING SUMMARY JUDGMENT

The Department may suggest that the Supreme Court's stay in *Tex. Top Cop Shop* changes the merits analysis. Such an argument is unavailing.

In January the Supreme Court stayed the preliminary relief granted in a similar challenge to the CTA. *McHenry v. Tex. Top Cop Shop, Inc.*, 145 S. Ct. 1 (2025). This Court then stayed its preliminary relief in light of *McHenry*. Docket No. 39.

The stay in *Tex. Top Cop Shop* does not prevent this Court from granting a motion for summary judgment. *First,* the Supreme Court's stay refers only to the *Tex. Top Cop Shop* order, referring to it by its specific case number. *McHenry*, 145 S. Ct. at 1. It did not mention this judicial proceeding at all. Nor did it stay other proceedings in *Tex. Top Cop Shop*. The Supreme Court's stay only operates on the December 5 order, not the broader case in *Tex. Top Cop Shop*. *Id*. For that same reason, the stay in *Tex. Top Cop Shop* does not prevent this Court from proceeding to summary judgment.[2]

*Second*, the *Tex. Top Cop Shop* stay order does not change the merits analysis in this case. The Court's order does not provide any rationale for granting the stay, nor does it reach the merits of *Tex. Top Cop Shop*'s similar constitutional claims. *Id*. When considering a request for a stay pending appeal, courts consider four factors: (1) likelihood of success on the merits; (2) likelihood of irreparable harm; (3) the

---

[2]    The Department also admitted that *McHenry* did not have any effect on this Court's preliminary relief. *Beneficial Ownership Information*, Financial Crimes Enforcement            Network            (Feb.            13,            2025), https://web.archive.org/web/20250213094954/https://fincen.gov/boi, (under heading "Alert: Ongoing Litigation – *Smith, et al. v. U.S. Department of the Treasury, et al.*" appears the following: "In light of a recent federal court order, reporting companies are not currently required to file beneficial ownership information with FinCEN").

balance of equities; and (4) the public interest. *Nken v. Holder*, 556 U.S. 418, 434 (2009). But a court need not reach all of these factors to rule. *Def. Distributed v. United States Dep't of State*, 838 F.3d 451, 457 (5th Cir. 2016). Indeed, in *Def. Distributed*, the Fifth Circuit refused to even *consider* arguments regarding the likelihood of success on the merits when the government made an uncontested showing that an injunction would negatively affect the public's interest in national security. *Id.*

The Supreme Court may have taken the same approach in *Tex. Top Cop Shop*. In its briefing to the Court in that case, the Department argued that lifting the injunction against the Corporate Transparency Act (CTA) was essential to "protect vital United States national security interests" and "*critical* national security, intelligence, and law enforcement efforts." Merrick Garland et al.'s Appl. for Stay at 26, *McHenry v. Tex. Top Cop Shop, Inc.*, 145 S. Ct. 1 (2025) (emphasis added); *see also id.* at 3–5, 9, 18, 19, 27, 30 (advancing similar national security arguments).

Given the emergency docket's shortened briefing schedule and limited time to consider the case, a majority of the Court may have simply deferred to the Department's claims of an existential national security threat—claims which the Department has since implicitly recanted in this case. Following the change in Administrations, the Department now explicitly disavows this national security rationale as to domestic entities. Interim Final Rule, 90 Fed. Reg. at 13,691. Instead, the Department "has determined for purposes of this interim final rule that the reporting of BOI by domestic reporting companies and their beneficial owners 'would not serve the public interest' and 'would not be highly useful in national security, intelligence, and law enforcement agency efforts.'" *Id.* In other words, this case no longer implicates national security concerns.

Nothing in the *Tex. Top Cop Shop* order indicates any reason why the Supreme Court granted the stay. It is impossible to infer whether or how the Supreme Court

will address the merits in *Tex. Top Cop Shop*. Until a higher court reaches the merits in a CTA case, this Court should proceed to summary judgment and rule in accordance with its January 7 opinion.

## IV. THE DEPARTMENT'S INTERIM FINAL RULE DOES NOT MOOT THIS CASE

The Department may argue that declaratory relief is not proper here because any risk of enforcement has been mitigated by its Interim Final Rule. But the recently promulgated Interim Final Rule does not moot this case. Defendants admitted this in briefing before the Fifth Circuit. Ds' Opp'n to Mot. to Dismiss Appeal at 10, *Smith v. Dep't of the Treasury*, No. 25-40071, ECF No. 67 (5th Cir. filed Apr. 21, 2025) ("at this stage, because the Interim Final Rule is subject to change by the end of the year, plaintiffs' challenge is not moot, and neither is this appeal"). The Fifth Circuit agreed that the Department's appeal "is not moot." Docket No. 40 at 2, *Smith v. Dep't of the Treasury*, No. 25-40071 (5th Cir. May 20, 2025). The Fifth Circuit noted that "the government expressly intends to engage in rulemaking that could (at least theoretically) undo every change in the Interim Final Rule" and that "[a]fter the comment period, the government could decide to permanently eliminate the challenged portions of the original implementing rule, thereby mooting this interlocutory appeal. It just as easily could not." *Id.* at 2–3. For the same reasons that Defendants' appeal is not moot, this case is not moot either.

When the government is the defendant, it "bears the burden to establish that a once-live case has become moot." *West Virginia v. EPA*, 597 U.S. 697, 719 (2022). "A case is moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party. As long as the parties have a concrete interest, however small, in the outcome of the litigation, the case is not moot." *Jackson v. Noem*, 132 F.4th 790, 793 (5th Cir. 2025) (internal quotations and citations removed). One way a case becomes moot "is when a challenged policy is repealed." *Id.*

The Department's Interim Final Rule did not repeal the CTA. Only Congress can do that. *See* Repealing Big Brother Overreach Act, S. 100 & H.R. 425, 119th Cong. (2025) (proposed bills to repeal the CTA). And while the Interim Final Rule amended 31 C.F.R. § 1010.380 to purportedly exempt domestic entities, Interim Final Rule, 90 Fed Reg. at 13,696, it did so only after receiving three court rulings preventing the original rule from taking effect.[3]

Moreover, even though the Interim Final Rule purports to exempt all domestic entities, the statute on its face still applies to domestic entities. 31 U.S.C. § 5336(a)(11)(A)(i) ("The term 'reporting company' means a corporation, limited liability company, or other similar entity that is created by the filing of a document with a secretary of state or a similar office under the law of a State or Indian Tribe") (cleaned up). And the Department refuses to disclaim any future intention to regulate Plaintiffs under the CTA. *Cf.* Docket No. 40 at 2–3, *Smith v. Dep't of the Treasury*, No. 25-40071 (5th Cir. May 20, 2025) ("the government could decide to permanently eliminate the challenged portions of the original implementing rule . . . . It just as easily could not."). They only argue that Plaintiffs do not have a "burden to comply *presently* with the CTA." Ds' Opp'n to Mot. to Dismiss Appeal at 13 (emphasis added).

The government's "burden is heavy where, as here, the only conceivable basis for a finding of mootness in the case is the respondent's voluntary conduct." *West Virginia*, 597 U.S. at 719 (citing *Friends of the Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.*, 528 U. S. 167, 189 (2000)) (cleaned up). "'[V]oluntary cessation does not moot a case' unless it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Id.* at 720 (quoting *Parents Involved in Community Schools* v. *Seattle School Dist. No. 1*, 551 U. S. 701, 719 (2007)). Just as

---

[3]    *See* Docket No. 30; *Tex. Top Cop Shop, Inc. v. Garland*, Civil Action No. 4:24-CV-478, 2024 U.S. Dist. LEXIS 218294 (E.D. Tex. Dec. 3, 2024); *Nat'l Small Bus. United v. Yellen*, 721 F. Supp. 3d 1260 (N.D. Ala. 2024).

in *West Virginia*, the government here "vigorously defends the legality" of the challenged statute and rule. *Id.*; Ds' Opp'n to Mot. to Reinstate Inj. at 14–18, *Smith v. Dep't of the Treasury*, No. 25-40071, ECF No. 47 (5th Cir. filed Mar. 7, 2025).

In promulgating the Interim Final Rule, the Department has used its broad discretionary powers to exempt domestic entities from the CTA. Interim Final Rule, 90 Fed. Reg. at 13,690. But there is no guarantee that this exemption will remain in place "if this litigation is resolved in [the government's] favor." *West Virginia*, 597 U.S. at 720. The Department so far has refused to say whether the final rule (to be issued later this year) will continue to exempt Plaintiffs' entities. Ds' Opp'n to Mot. to Dismiss Appeal at 13.

Indeed, there is reason to believe that the Department's exemption conflicts with the statute's text. Although 31 U.S.C. § 5336 (a)(11)(B)(xxiv) gives the Secretary discretion to exempt *some* entities, it is clear that Congress intended to regulate domestic entities. William M. (Mac) Thornberry National Defense Authorization Act for Fiscal Year 2021, Pub. L. No. 116–283, § 6402, 134 Stat. 3388, 4604–05 (2021). In fact, five of the eight Sense of Congress paragraphs mention problems with, and the need to regulate, domestic entities. Courts do not "read an exception to swallow the rule" even if the statute authorizes the exception. *PG&E v. FERC*, 113 F.4th 943, 949 (D.C. Cir. 2024). Exempting all domestic entities from the CTA therefore cannot be the "best reading of the statute." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

Because this exemption is discretionary, a future FinCEN Director (or even this one) may change the agency's position at any time. *See Encino Motorcars, LLC v. Navarro*, 579 U.S. 211, 221 (2016) ("Agencies are free to change their existing policies as long as they provide a reasoned explanation for the change."). This Court can still grant Plaintiffs effectual relief by declaring that the CTA is unconstitutional,

or at a minimum, that the CTA cannot be constitutionally enforced against domestic entities that do not engage in interstate commerce.

True, Fifth Circuit precedent presumes that, "without evidence to the contrary," the government acts in good faith as to voluntary cessation. *U.S. Navy Seals 1-26 v. Biden*, 72 F.4th 666, 674 (5th Cir. 2023). In *U.S. Navy Seals 1-26* the Fifth Circuit held that the SEALs' challenges to the COVID-19 vaccine mandate were moot. *Id.* at 671. That's because Congress enacted a law directing the Secretary of Defense to rescind the mandate and the Secretary promptly complied. *Id.* But the Fifth Circuit also held that Coast Guard servicemembers' challenge to the Secretary of Homeland Security's vaccine mandate was not moot. *Jackson v. Noem*, 132 F.4th 790, 794 (5th Cir. 2025). Even though the Secretary of Homeland Security had rescinded the mandate, he was not covered by Congress's vaccine mandate rescission. *Id.* at 792–93. That means the Secretary voluntarily rescinded the vaccine mandate. The Coast Guard also refused to rule out using vaccine status for any future adverse action. *Id.* at 793.

This case is not moot for the same reasons that *Jackson* was not moot. Unlike in *U.S. Navy Seals 1-26*, questions of mootness in both this case and *Jackson* arise from the Executive Branch's voluntary actions, not by Congress changing the law. Like in *Jackson*, the government has not ruled out reimposing the rescinded policy or relying upon the rescinded policy for future adverse actions. Also like in *Jackson*, it is not "impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* at 793. Although the implementing rule no longer applies to Plaintiffs, there is no argument that the statute continues to apply to Plaintiffs on its face. If the IFR's discretionary exemption goes away for any reason, the statute will immediately require plaintiffs to file a report. A declaratory judgment and injunction against the statute itself will provide "effectual relief . . . to the prevailing party." *Id.* Thus this case is not moot.

26

## CONCLUSION

For the foregoing reasons, Plaintiffs request this Court grant summary judgment, declaring that the CTA exceeds Congress's enumerated powers.

Date: May 21, 2025,                    Respectfully submitted,

*/s/Eric Heigis*
ROBERT HENNEKE
TX Bar No. 24046058
rhenneke@texaspolicy.com
CHANCE WELDON
TX Bar No. 24076767
cweldon@texaspolicy.com
ERIC HEIGIS
VA Bar No. 98221
eheigis@texaspolicy.com
TEXAS PUBLIC POLICY FOUNDATION
901 Congress Avenue
Austin, Texas 78701
Telephone:   (512) 472-2700
Facsimile:   (512) 472-2728

### CERTIFICATE OF SERVICE

I hereby certify that on May 21, 2025, I electronically filed the foregoing with the Clerk of the Court for the Eastern District of Texas by using the CM/ECF system, which will serve a copy of same on all counsel of record.

*/s/Eric Heigis*
ERIC HEIGIS